ALCAN UNITED, INC., Plaintiff-Appellee, v. WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Appellant and Counterplaintiff-Appellant (Gateway Concrete Forming Systems, Inc., *et al.*, Defendants; Alcan United, Inc., *et al.*, Counterdefendants; Reliance National Insurance Company, Third-Party Defendant-Appellee).

First District (2nd Division)   No. 1—98—0748

Opinion filed February 16, 1999.

---

Cremer, Kopon, Shaughnessy & Spina, of Chicago (Francis A. Spina and James P. Kenny, of counsel), for appellant.

Foley & Lardner, of Chicago (Frank A. Citera and Todd A. Strother, of counsel), for appellees.

PRESIDING JUSTICE GORDON delivered the opinion[1] of the court:

Alcan United, Inc. (Alcan),[2] the plaintiff, brought this action against defendants, West Bend Mutual Insurance Company (West Bend), Gateway Concrete Forming Systems, Inc. (Gateway), Morse Diesel, Inc., and Michael Reynolds. In count I, Alcan sought a declaration that West Bend was obligated to provide coverage to Alcan for a personal injury lawsuit filed by Michael Reynolds against Morse Diesel, Inc., the general contractor on a construction project, and Alcan, Morse Diesel's subcontractor, under a policy issued to Gateway, Alcan's construction subcontractor, which named Alcan as an additional insured. In count II, Alcan alternatively alleged that if West Bend was not contractually obligated to assume Alcan's defense and to indemnify Alcan, then Gateway breached its contract with Alcan by failing to provide insurance on behalf of Alcan for all claims relating to Alcan's performance of its work on the project. West Bend filed a countercomplaint and amended countercomplaint against Alcan and a third-party complaint and amended third-party complaint against Reliance National Insurance Company (Reliance), Alcan's insurer, seeking a declaration that West Bend's insurance policy was excess to Reliance's policy and that West Bend had no duty to defend or indemnify Alcan unless and until the Reliance policy limits were exhausted.

The parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Alcan and Reliance, finding that the coverage provided in West Bend's policy was primary to any other coverage and that West Bend was obligated to assume Alcan's defense in the Reynolds litigation as of January 12, 1996, and to indemnify Alcan for any losses in that litigation. The court further found that Reliance owed no duty to Alcan or West Bend until the West Bend policy limits were exhausted. West Bend appeals.

On appeal, West Bend contends that the trial court erred in find-

---

[1]Pursuant to the filing of a petition for rehearing and by order of this court, the original opinion filed in this case on September 30, 1998, was withdrawn and the instant opinion was substituted in its place. The outcome of the case remains unchanged.

[2]We note that, in the lower court proceedings, Alcan moved to correct its name to Alcan United Concrete, Inc. Alcan indicated that Alcan United, Inc., and Alcan United Concrete, Inc., are related but separate companies and that Alcan United Concrete, Inc., was the entity named in the insurance policies that were the subject of action before the court. Notwithstanding this motion, all subsequent pleadings, including the notice of appeal filed in this court, continued to be captioned as Alcan United, Inc.

ing that Reliance's policy was not co-primary to West Bend's policy. It argues that Reliance was obligated to share in the payment of Alcan's defense costs because Alcan first tendered the Reynolds lawsuit to Reliance and because the "other insurance" clause in West Bend's insurance policy required that all primary insurers share defense costs equally. West Bend also argues that the trial court erred in determining the date upon which the Reynolds lawsuit was tendered to West Bend. For the reasons discussed below, we affirm the order of the trial court granting summary judgment to Alcan and Reliance.

## I. UNDISPUTED FACTS

The undisputed facts derived from the parties' pleadings, motions, affidavits and depositions show that Alcan entered into a subcontract agreement with Gateway whereby Gateway was to perform subcontracting work for Alcan. The contract between Alcan and Gateway required Gateway to procure an insurance policy listing Alcan as an additional insured. The contract also required that the insurance policy "be endorsed as PRIMARY/NON-CONTRIBUTORY to any insurance of the ADDITIONAL INSUREDS." Gateway contracted with West Bend to provide the necessary insurance. The West Bend policy contained an endorsement providing insurance coverage to persons or organizations that Gateway was required "under a written contract or agreement currently in effect or becoming effective during the term of the policy" to add as additional insureds. Alcan was identified as an additional insured under the West Bend policy.

Michael Reynolds, the plaintiff in the underlying action and a Gateway employee, was allegedly injured on January 10, 1994, while performing work pursuant to the subcontract between Gateway and Alcan. Reynolds filed his personal injury lawsuit against Alcan on December 23, 1994. On February 10, 1995, Alcan's registered agent, Burton Reif, forwarded a copy of the summons and complaint in the Reynolds litigation to Alcan. Alcan forwarded those documents to its insurance broker, Schwartz Brothers Insurance, on February 13, 1995. Schwartz Brothers then forwarded the documents to Reliance, which undertook Alcan's defense in the Reynolds litigation. On January 12, 1996, the Blackmoor Group, a third-party claims adjuster for Reliance, tendered the Reynolds lawsuit to West Bend for full defense and indemnification to Alcan. West Bend did not respond to the tender, and Alcan filed its declaratory judgment complaint against West Bend and Gateway on June 6, 1996.[3]

In their joint motion for summary judgment, Alcan and Reliance

---

[3]On February 3, 1997, the trial court stayed Alcan's action against

conceded that Alcan was potentially covered for the Reynolds claim by Reliance as well as by West Bend. They argued, *inter alia*, that, based upon *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), Alcan had the right to choose which of the two carriers should defend and indemnify the Reynolds claim; that Alcan chose West Bend to defend and indemnify it; and that West Bend was foreclosed from seeking contribution from Reliance. They argued that, as the Reynolds claim was within or potentially within the coverage provisions of West Bend's policy, West Bend was obligated to assume Alcan's defense. Attached to their memorandum of law in support of their motion for summary judgment was the deposition of Michael Tiberi, Alcan's president. In that deposition, Tiberi stated that he did not want Reliance "to do whatever it's obligated to do under [its] policy on [Alcan's] behalf." He gave the following reason for that response:

> "Because Reliance is my insurance carrier; and this accident, *** as shown by these drawings, is the result of actions by a worker employed by Gateway Forming who, in turn, has Alcan United Concrete listed as an additional insured with their own insurance company carrying that coverage."

With respect to Alcan's desire not to seek coverage under the policy issued to it by Reliance, Tiberi was asked the following question and gave the following answer:

> "Q. *** If the West Bend policy does provide coverage, do you want the Reliance policy to participate in Alcan's defense indemnification [*sic*]?
>
> A. No. I want West Bend to cover this insurance requirement."

In its cross-motion for summary judgment, West Bend argued, *inter alia*, that it was jointly liable with Reliance from the date of tender of the lawsuit to it. West Bend argued that Reliance was liable because Alcan had tendered the Reynolds lawsuit to Reliance and because Reliance had assumed Alcan's defense after that tender. West Bend further argued that Alcan could not "deactivate" its tender to Reliance and that, once activated, Reliance's policy remained operative. West Bend also argued that since both policies had been activated by tender, the "other insurance provisions" therein required Reliance and West Bend, as primary insurers, to share defense costs and indemnification equally. West Bend also argued, based upon *Institute of London*, 234 Ill. App. 3d 70, 599 N.E.2d 1311, that the tender on January 12, 1996, by Reliance's claims adjuster to West Bend was not

Gateway, alleging failure to procure primary insurance, pending resolution of Alcan's claim against West Bend.

valid since it was made by Reliance, Alcan's insurer, rather than Alcan, the insured.

In its memorandum of opinion, the trial court found, pursuant to *Institute of London*, that Alcan had the right to choose West Bend to defend and indemnify it exclusively; that Alcan could "deactivate" its prior tender to Reliance; and that the January 12, 1996, tender by Reliance to West Bend was valid because it was made on Alcan's behalf.

## II. DISCUSSION

■ Summary judgment is proper where the pleadings, depositions, admissions of record and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992); *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21 (1998). Appellate review of an order granting summary judgment is *de novo*. *E.g., American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 699 N.E.2d 1056 (1998); *Apostal v. Oliveri Construction Co.*, 287 Ill. App. 3d 675, 678 N.E.2d 756 (1997). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *In re Estate of Herwig*, 237 Ill. App. 3d 737, 604 N.E.2d 1164 (1992).

The parties to the instant appeal concede that there are no issues of material fact with respect to the question of potential coverage. They concede that coverage for the Reynolds claim is potentially available under the policy issued by Reliance as well as the policy issued by West Bend. West Bend argues on appeal, however, that the trial court erred in finding that only West Bend was required to defend and, if necessary, indemnify Alcan. West Bend argues that the trial court should have found the coverages from both insurance carriers primary and should have ordered that they share in the payment of Alcan's defense costs and indemnification. Reliance, on the other hand, argues that Alcan had the option to either seek defense and indemnification from both insurers or to choose one of the two insurers and that Alcan did in fact choose only West Bend.

Both parties cite to *Institute of London*, 234 Ill. App. 3d 70, 599 N.E.2d 1311, in support of their respective positions. In that case, Institute of London Underwriters (Institute) brought a declaratory judgment action against Hartford Fire Insurance Company (Hartford) seeking a judicial determination that Hartford was obligated to pay a 50% share of an accident settlement procured by the Institute involving a claim against The Great Lakes Towing Company (Great Lakes). The claim against Great Lakes was covered by both companies' insur-

ance policies. Great Lakes was covered as an additional insured under Institute's policy issued to Thatcher Engineering Corporation, a company hired by Great Lakes to perform repairs. The undisputed facts showed that Great Lakes tendered the defense of the underlying personal injury lawsuit to Thatcher with the intention that coverage be sought under Thatcher's policy with Institute. Great Lakes also notified Hartford, Great Lakes' comprehensive liability insurer. Great Lakes apprised Hartford of the status of the personal injury lawsuit but told Hartford that the primary duty to defend belonged to Institute.

Shortly thereafter, the lawsuit was settled, and Institute's attorney wrote to Hartford requesting that Hartford contribute one-half of the settlement amount. Great Lakes did not ask, instruct or authorize that request. The record showed that Great Lakes's vice-president told Institute's attorney that it did not wish Hartford to contribute and also told Hartford's adjuster that Great Lakes did not want Hartford to pay any indemnification or defense costs. Hartford thereafter declined to contribute, and Institute filed its declaratory judgment action.

In holding that Hartford was not required to contribute to Institute, the court began its analysis by stating the general rule that "[a]n insurer's obligations under an insurance contract are ordinarily triggered when the insured or someone's action on the insured's behalf tenders the defense of an action potentially within the policy coverage." *Institute of London,* 234 Ill. App. 3d at 73, 599 N.E.2d at 1313. The court found, however, that Great Lakes did not tender defense of the personal injury lawsuit to Hartford, that Great Lakes never sought Hartford's assistance, that Great Lakes did not ask or authorize Institute's attorney to send the tender letter to Hartford, and that Great Lakes' vice-president specifically told Hartford's adjuster that it did not want Hartford to respond to the settlement communications. Accordingly, the court held that Hartford was excused from performing under its policy and from contributing to the settlement procured by Institute.

In recognizing an insured's right to choose between two insurers whose policies provide potential coverage, the court noted that Great Lakes had bargained for coverage under Institute's policy procured by Thatcher. In that regard the court stated:

> "Great Lakes had bargained with Thatcher to be an additional insured in its liability policy for the construction project Thatcher was to perform on Great Lakes' premises. Great Lakes did not tender its defense to Hartford because it concluded it was not responsible for the accident resulting in the death of Thatcher's

employee, Garcia, and that Thatcher's insurer, the Institute, was the appropriate carrier to respond to the Garcia claim. Great Lakes may well have feared that if the loss were attributed to its policy with Hartford the result might be a rise in premiums or cancellation of its policy. This factor alone suggests the insured ought to have the right to seek or not to seek an insurer's participation in a claim as the insured chooses when more than one carrier's policy covers the loss." *Institute of London*, 234 Ill. App. 3d at 78-79, 599 N.E.2d at 1316.

In reliance on *Institute of London*, West Bend contends that Alcan made a tender to both Reliance and West Bend such that, in accordance with the "other insurance" clause in each policy,[4] Reliance and West Bend became co-primary insurers and were required to share equally in defense costs and indemnification up to the policy limits of each insurer's respective policy. West Bend further contends that Alcan's prior tender to Reliance could not be "de-activated" when the subsequent tender was made to West Bend so as to make West Bend the exclusive insurer covering the potential loss resulting from the Reynolds lawsuit.

Alcan also relies on *Institute of London*, but it contends that the "other insurance" clauses in the policies did not come into play because Alcan did not wish to obtain coverage under both policies. Alcan contends that it had the right to choose West Bend as its exclusive insurer and to excuse Reliance from any further coverage obligation upon discovering West Bend's coverage with respect to the Reynolds lawsuit.

■ Our court has recognized the paramount right of the insured "to seek or not to seek an insurer's participation in a claim as the insured chooses." *Institute of London*, 234 Ill. App. 3d at 79, 599 N.E.2d at 1316. This right was recently reiterated by our supreme court in *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998). In *Cincinnati Cos.*, the court stated:

> "It is true that an insured may choose to forgo an insurer's assistance for various reasons, such as the insured's fear that premiums would be increased, or the policy cancelled, in the future. See *Institute of London*, 234 Ill. App. 3d at 78-79. Moreover, an insured's ability to forgo that assistance should be protected." 183 Ill. 2d at 326, 701 N.E.2d at 503.

---

[4]The "other insurance" clause in West Bend's policy provided in pertinent part that "[i]f other valid and collectible insurance is available" and if that other insurance permits contribution by equal shares, then West Bend and each other insurer shall contribute equal amounts for the covered loss. Reliance's policy had a similar "other insurance" clause permitting contribution in equal shares.

Accord *Bituminous Casualty Corp. v. Royal Insurance Co.*, 301 Ill. App. 3d 720, 724 (1998) (stating "the supreme court has firmly established an insured's right to select exclusive coverage").

The insured's right to choose coverage, despite the presence of "other insurance" clauses in the policies of two potential insurers, was most recently emphasized by the Illinois Appellate Court, Third District, in *Bituminous Casualty*, 301 Ill. App. 3d 720. The facts in that case were nearly identical to those in *Institute of London*. The insured, Glen H. Johnson Construction Company, a general contractor, had coverage for the loss under its general liability insurance policy issued by Royal Insurance and under the policy of its subcontractor issued by Bituminous Casualty. Unlike in *Institute of London,* however, both policies had "other insurance" clauses. Johnson Construction expressly chose to look solely to Bituminous Casualty for defense and indemnification. After settling the underlying case, Bituminous Casualty sought from Royal Insurance one-half of the amount it expended to defend and indemnify Johnson Construction. The trial court granted that relief but was reversed on appeal.

Citing *Cincinnati Cos.,* the *Bituminous Casualty* court on review held that Johnson Construction could and did select one insurer to provide its defense and indemnification and, having made that choice, the chosen insurer, Bituminous Casualty, could not seek equitable contribution from the other insurer, Royal Insurance, which was not designated by the insured. *Bituminous Casualty,* 301 Ill. App. 3d at 724, citing *Cincinnati Cos.,* 183 Ill. 2d at 324, 701 N.E.2d at 503. In reaching that conclusion, the *court* rejected Bituminous Casualty's argument that the "other insurance" clauses found in both policies mandated contribution by both carriers. In that regard the court stated:

> "It is only when an insurer's policy is triggered that the insurer becomes liable for the defense and indemnity costs of a claim and it becomes necessary to allocate the loss among co-insurers. The loss will be allocated according to the terms of the 'other insurance' clauses, if any, in the policies that have been triggered. As discussed above, Royal's policy was not triggered and its obligation to defend and indemnify Johnson Construction *** was excused by the targeted tender to Bituminous." *Bituminous Casualty,* 301 Ill. App. 3d at 726.

We note that *Bituminous Casualty* is in conflict with a case decided in our district, *John Burns Construction Co. v. Indiana Insurance Co.,* 299 Ill. App. 3d 169, 700 N.E.2d 763 (1998). Under substantially identical facts, the court in *Burns Construction* held that "an insurer to whom litigation is tendered may seek contribution from another insurer whose policy is applicable, where the insurer to whom tender

is made has an 'other insurance' clause in its policy, even though such action is contrary to the wishes of the insured." *Burns Construction,* 299 Ill. App. 3d at 173, 700 N.E.2d at 766. We must respectfully disagree with this holding, as we believe it violates *the* insured's paramount right to choose an insurer's participation in a claim, a right recently emphasized by our supreme court in *Cincinnati Cos.,* 183 Ill. 2d 317, 701 N.E.2d 449. We note, as did the *Bituminous Casualty* court, that the *Burns Construction* court did not have the benefit of *Cincinnati Cos.* when it rendered its decision.

We also note that *Burns Construction* distinguished *Institute of London* on the basis that the insurer to whom tender was made had an "other insurance" clause in its policy, whereas in *Institute of London* that insurer did not have such a clause in its policy. *Burns Construction,* 299 Ill. App. 3d at 174, 700 N.E.2d at 767. That distinction is not persuasive since language in *Institute of London* suggests that the result in that case would not have been different had Institute's policy contained an "other insurance" clause. In that regard the court stated:

> " 'Only when a policy is triggered and the insurer becomes obligated to pay "all sums" and to defend "any suit" does the "other insurance" clause come into play to allow liability to be apportioned among the insurers.' " *Institute of London,* 234 Ill. App. 3d at 77, 599 N.E.2d at 1315, quoting *Zurich Insurance Co. v. Raymark Industries, Inc.,* 145 Ill. App. 3d 175, 200, 494 N.E.2d 634 (1986), *aff'd,* 118 Ill. 2d 23, 514 N.E.2d 150 (1987).

This passage supports the proposition that multiple policies must be triggered by the insured before the insurer on any of those policies can invoke its "other insurance" clause to apportion liability. See *Bituminous Casualty,* 301 Ill. App. 3d at 726 (disagreeing with underlying premise in *Burns Construction,* 299 Ill. App. 3d 169, 700 N.E.2d 763). Thus, in accordance with *Bituminous Casualty* and *Institute of London,* we hold an "other insurance" clause in a policy will not automatically reach into coverages provided under other policies merely because such other policies are in existence. The insured still must be given the right to determine whether it wishes to invoke its rights to such other coverages before those coverages become accessible under the "other insurance" provision of a triggered policy.

In the instant case, there is no question that West Bend's policy was triggered and that its "other insurance" clause could, under certain circumstances, operate to limit West Bend's liability by apportioning the loss among several insurers. However, as discussed, West Bend's "other insurance" clause speaks only to West Bend's liability when "other valid and collectible insurance is available" and merely limits that liability to the manner of apportionment provided once the insured has exercised its right to seek coverage from multiple

insurers. See *Bituminous Casualty,* 301 Ill. App. 3d at 726. See also *Institute of London,* 234 Ill. App. 3d at 77, 599 N.E.2d at 1315. Had West Bend desired to impose a contractual duty upon its insured to tender the defense of any claim or lawsuit to any other insurer which also has available insurance for the loss, it could have done so by providing language to that effect in the insurance contract. See *American Country Insurance Co. v. Kraemer Brothers, Inc.,* 298 Ill. App. 3d 805, 812, 699 N.E.2d 1056, 1061-62 (1998) (upholding endorsement to insurance policy requiring insured to tender defense to any other insurer which also has available insurance). As West Bend's policy contained no such language, Alcan had the right to initially choose whether to seek coverage under all available insurance; and, as shall be discussed below, West Bend could not seek contribution from Reliance pursuant to West Bend's "other insurance" clause because Alcan did not choose contemporaneous coverage from both West Bend and Reliance. See *Bituminous Casualty,* 301 Ill. App. 3d at 725-26; see also *Employers Insurance v. James McHugh Construction Co.,* 144 F.3d 1097 (7th Cir. 1998) (insurer not entitled to contractual contribution where no tender by insured to other insurer).

■ West Bend argues that the "other insurance" clauses in the policies of Reliance and West Bend contemporaneously came into play because both policies were activated by Alcan for a period of time. We disagree. The undisputed facts in the instant case show that when Alcan first tendered the Reynolds lawsuit to Reliance, it had done so without knowledge of the existence of simultaneous coverage under West Bend's policy. It cannot be said that, at that time, Alcan made a knowing choice and desired to seek simultaneous coverage from Reliance as well as from West Bend. See *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 282 Ill. App. 3d 716, 722, 668 N.E.2d 627, 632 (1996) (concluding that insured has not made a coverage choice when at the time of tender the insured has no knowledge of coverage under another policy). The facts further show that, later, upon discovering that West Bend's policy also afforded coverage for the Reynolds lawsuit, Alcan tendered that lawsuit to West Bend. When Alcan tendered the lawsuit to West Bend, it again was not seeking contemporaneous coverage from Reliance and from West Bend. It sought exclusive coverage from West Bend and desired to deactivate its tender to Reliance, relegating Reliance's duty to it to provide standby coverage in the event West Bend refused tender, which, in fact, West Bend did.[5]

West Bend contends, however, that, having activated coverage

[5]In support of its contention that Alcan sought contemporaneous coverage

under Reliance's policy, Alcan could not deactivate or withdraw its tender to Reliance to negate the effect of the "other insurance" clause in West Bend's policy. West Bend has cited no authority for that contention, and we cannot agree with the merits of that contention. As discussed above, the insured has a paramount right to choose or not to choose an insurer's participation in a claim (see *Cincinnati Cos.*, 183 Ill. 2d at 317, 701 N.E.2d at 503; *Institute of London*, 234 Ill. App. 3d at 79, 599 N.E.2d at 1316); and the "other insurance" clause in West Bend's policy did not preclude Alcan's right to choose. See *Bituminous Casualty*, 301 Ill. App. 3d at 726; see also *Employers Insurance*, 144 F.3d 1097, citing *Institute of London*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (insured did not breach insurance contract allowing for contractual contribution by refusing to tender lawsuit to other insurer, finding insured had right to select between the two insurers). Nor does the "other insurance" clause in Reliance's policy give West Bend any enhanced rights as a third-party beneficiary since, if anything, that clause does not require contribution, but only specifies the formula to be used when a right to contribution exists. See *Institute of London*, 234 Ill. App. 3d at 79, 599 N.E.2d at 1316, citing *Sabath v. Mansfield*, 60 Ill. App. 3d 1008, 1016, 377 N.E.2d 161, 169 (1978) (a third-party beneficiary claimant must clearly show that the contract was made for his direct benefit).

Under the reasoning and policy considerations of *Cincinnati Cos.*, *Bituminous Casualty*, *Institute of London,* and *Employers Insurance,* giving the insured the option to choose coverage, the insured also should be permitted to deactivate coverage with a carrier previously selected for purposes of invoking exclusive coverage with another carrier. This should be true, particularly, when the deactivation occurs upon the discovery of other coverage not known to have been in existence at the time the first tender took place. See *Federated Mutual*, 282 Ill. App. 3d at 722, 668 N.E.2d at 632. Thus, as Alcan never chose contemporaneous coverage under the policies issued by West Bend and Reliance, and as coverage under Reliance's policy was deactivated

---

from West Bend and Reliance, West Bend contends that the declaratory judgment pleadings filed by Alcan in June 1996 sought a sharing of defense costs and indemnity between Reliance and West Bend. We disagree. In its prayer for relief, Alcan specifically requested the court to "enter a declaratory judgment finding that West Bend is contractually obligated to assume the defense of Alcan in its defense against the complaint of Reynolds and to indemnify Alcan for *any losses* it may suffer in connection with the action brought by Reynolds." (Emphasis added.) This language does not suggest a request by Alcan that West Bend share defense costs and indemnification; rather, it seeks a ruling that West Bend assume the sole undertaking of those costs.

before coverage under West Bend's policy was sought, there was no "other insurance" upon which West Bend could seek contribution.

■ As its second and alternative argument on appeal, West Bend argues that the trial court erred in determining that its liability for defense costs began on January 12, 1996, the date Reliance tendered the Reynolds lawsuit to West Bend. West Bend concedes, however, that, in accordance with our supreme court's decision in *Cincinnati Cos.* filed while the instant case was pending, the date upon which its duty to defend arose was January 12, 1996. *Cincinnati Cos.* held that an insurer's duty to defend is triggered by actual notice of the underlying lawsuit where the insured has not knowingly decided against that insurer's involvement. *Cincinnati Cos.*, 183 Ill. 2d at 329, 701 N.E.2d at 505. Accord *Employers Insurance of Wausau v. EHLCO Liquidating Trust*, 186 Ill. 2d 127, 143 (1999). That court defined actual notice as " 'notice sufficient to permit the insurer to locate and defend the lawsuit.' " *Cincinnati Cos.*, 183 Ill. 2d at 329, 701 N.E.2d at 505, quoting *Federated Mutual*, 282 Ill. App. 3d at 726, 668 N.E.2d at 633. Here, West Bend received notice of the Reynolds lawsuit on January 12, 1996, when Reliance tendered that lawsuit to it. The fact that the lawsuit was tendered by Reliance and not by Alcan, the insured, is of no consequence since it is not tender by the insured that creates the duty to defend but knowledge by the insurer that a defense may be required. See *Cincinnati Cos.*, 183 Ill. 2d at 329, 701 N.E.2d at 505.

For the foregoing reasons, we affirm the grant of summary judgment in favor of Alcan and Reliance.

Affirmed.

COUSINS and RAKOWSKI, JJ., concur.