**ATTORNEYS LIABILITY PROTEC-TION SOCIETY, a mutual risk retention group, Evelyn Zabel Wilson, Elmo Lund, and The Lund Law Firm, Plaintiffs,**

v.

**RELIANCE INSURANCE COMPANY, Defendant.**

No. CIV. A. 99–2302–KHV.

United States District Court, D. Kansas.

Sept. 7, 2000.

Bruce Keplinger, Norris, Keplinger & Herman, L.L.C., Overland Park, KS, for Plaintiffs.

Paul L. Wickens, Monica M. Fanning, Foland & Wickens, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Attorneys Liability Protection Society ("ALPS") filed suit against Reliance Insurance Company for declaratory relief, asking the Court to find that Reliance is either a primary insurer or a co-insurer with respect to a malpractice claim against Evelyn Zabel Wilson. In response, Reliance asks the Court to find that ALPS is the primary insurer. The matter is before the Court on *Plaintiff's Motion For Summary Judgment* (Doc. # 49) filed May 16, 2000 and *Reliance Insurance Company's Motion For Summary Judgment* (Doc. # 55) filed May 30, 2000. For reasons set forth below, the Court sustains the ALPS motion in part and overrules Reliance's motion in its entirety.

### *Summary Judgment Standards*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d

1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## Factual Background

For purposes of both motions for summary judgment, the following facts are uncontroverted or deemed admitted.

### A. Wilson's Employment And Professional Liability Coverage

From August 5, 1985 through June 12, 1992, the Lund Law Firm employed Evelyn Zabel Wilson as an associate attorney. Elmo Lund was president and owner of The Lund Law Firm. ALPS insured Elmo Lund, The Lund Law Firm and its attorney employees, including Wilson, under a series of professional liability policies commencing with Policy No. 01084–1 effective May 1, 1988 through May 1, 1989. Lund renewed that policy each year through May 1, 1992, when ALPS issued policy number 01084–4 effective May 1, 1992 through May 1, 1993. In June 1992, Lund informed ALPS that Wilson intended to leave the firm on June 12, 1992. Accordingly, effective June 13, 1992, ALPS canceled policy number 1084–4 and issued policy number 1084–4R. Each ALPS policy provided "claims made" coverage with a limit of $500,000 for each claim. In addition, each policy had a loss inclusion date of January 1, 1973, *i.e.* it covered claims made during the policy period for acts or omissions dating back to January 1, 1973.

On June 15, 1992, Wilson joined the law firm of Davis, Wright, Unrein, Hummer and McAllister (the "Davis Wright" law firm). From May 8, 1991 through May 8, 1992, Reliance insured the Davis Wright law firm under a "claims made" professional liability insurance policy. The Davis Wright firm renewed that policy and Reliance issued a new policy effective May 8, 1992 through May 8, 1993. Effective June 15, 1992, Reliance added Wilson as a named insured under a policy endorsement. In March 1993, the Davis Wright firm split into two firms and Wilson joined the firm of Wright, Henson, Somers, Sebelius, Clark and Baker (the "Wright Henson" law firm), which remained insured

under the Reliance policy through May 8, 1993.

## B. The Underlying Claim

J.W. Hessenflow, a former client of The Lund Law Firm, died testate on April 24, 1992. His will, which Wilson had drafted while she was employed at The Lund Law Firm, was admitted to probate. The Kansas Court of Appeals subsequently held that the consent of spouse form, which Wilson had prepared and Mrs. Hessenflow had signed, was invalid. The Hessenflow heirs contended that because the form was invalid, Mrs. Hessenflow—who was a second wife—was able to take a statutory election and receive $400,000 from the Hessenflow estate and $27,494 for a spousal allowance.

In January 1993, heirs of the Hessenflow estate sent demand letters to Wilson and The Lund Law Firm relating to the will and spousal consent. They alleged that in the spring of 1987, while Wilson was an associate at The Lund Law Firm, she had advised Hessenflow and Mrs. Hessenflow about an estate plan and prepared a will and consent of spouse form. The Hessenflow heirs asserted claims of professional negligence against Wilson, Lund and The Lund Law Firm.

## C. ALPS Defense Of Wilson, Lund And The Lund Law Firm

On February 19, 1993, Lund sent the Hessenflow demand letter to ALPS, his insurer. ALPS determined that its policy provided coverage to defend and indemnify Wilson, Lund and The Lund Law Firm, and it retained counsel to represent them. ALPS did not seek or obtain a reservation of rights agreement with Wilson, Lund or The Lund Law Firm.

In the summer of 1996, counsel for the Hessenflow heirs, counsel for Wilson and an ALPS claims representative, attempted to mediate the Hessenflow claim. Neither ALPS nor Wilson communicated to Reliance the fact or the date of the mediation. At the mediation, ALPS offered $25,000 to settle the claims against Wilson, Lund and The Lund Law Firm. The Hessenflow heirs rejected the offer and on August 20, 1996, they filed suit against Wilson, Lund and The Lund Law Firm. In April 1999, the Hessenflow heirs offered to settle the case for $485,000, which was less than the $500,000 policy limit of the ALPS policy. ALPS rejected the offer and submitted a counteroffer of $250,000, which the Hessenflow heirs rejected.

## D. Coverage Under The Reliance Policy For The Underlying Claim

Wilson notified the Davis Wright law firm and the successor Wright Henson law firm of the Hessenflow demand letter. On April 16, 1993, Thomas Wright, a partner in the Wright Henson law firm and attorney for Wilson, sent to Reliance a Lawyer Supplemental Claim/Incident Information form which reported the demand by the Hessenflow heirs. By letter dated May 11, 1993, Jerry Miller, Third Party Administrator for Reliance, acknowledged receipt of the form "providing notification of a claim against you by J.W. Hessenflow estate." On May 17, 1993, Wright responded that ALPS had assumed Wilson's defense and that "[n]o one submitted this claim to Reliance, to my knowledge." On May 20, 1993, Miller replied that because ALPS had assumed the defense and the events occurred under the ALPS policy, Reliance would take no further action.

In March of 1999, ALPS first discovered that the Reliance policy provided potential coverage for the Hessenflow claim. In April 1999, ALPS asked Reliance to contribute to any settlement of the Hessenflow claim. Reliance maintained that its policy provided only excess coverage.

On July 6, 1999, ALPS filed this declaratory judgment action against Reliance. Both parties have filed motions for summary judgment. ALPS asks the Court to declare that Reliance is the primary insurer, or at least a co-insurer, with respect to the Hessenflow claim. Reliance asks the Court to declare that it is only an excess insurer.

### Analysis

▮ Initially, the Court notes the general principles of insurance policy interpretation. The interpretation of an insurance policy, like other contracts, is a question of law. *See AMCO Ins. Co. v. Beck,* 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Disputed terms in an insurance policy are generally given their plain and ordinary meaning unless the parties have expressed a contrary intent. *See Pink Cadillac Bar & Grill, Inc. v. United States Fidelity & Guar. Co.,* 22 Kan.App.2d 944, 948, 925 P.2d 452, 456 (1996). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bureau Mut. Ins. Co., Inc. v. Winters,* 248 Kan. 295, 300, 806 P.2d 993, 996 (1991). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.,* 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Id.* If the policy is not ambiguous, the Court must enforce it as written. *See American Media, Inc. v. Home Indem. Co.,* 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983).

### I. Coverage Under The Reliance Policy

Effective May 8, 1992, Reliance insured the Davis Wright law firm under a professional liability "claims made" policy. The policy provides defense and indemnity for claims first made against the firm or its employees and reported to the company, during the policy period.

### A. Condition Of No Prior Policies

▮ The Reliance policy affords coverage for acts, errors or omissions that occurred prior to the policy period provided that the insured satisfies three conditions.

In the "Professional Liability and Claims Made Clause" of the coverage section, the Reliance policy obligates it

> To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as a result of the CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD caused by an act, error or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer or notary public.

It is a condition precedent to coverage under this policy that all claims be reported in compliance with the Section F: CLAIMS I. NOTICE OF CLAIMS.

> PROVIDED ALWAYS THAT such act, error or omission happens:
>
> (a) during the policy period; or
>
> (b) prior to the policy period, provided that prior to the effective date of the first Lawyers Professional Liability Insurance Policy Issued by this Company to the Named Insured or predecessor law firm and continuously renewed and maintained in effect to the inception of this policy period:
>
>> 1. The Insured did not give notice to any prior insurer of any such act or error, and
>>
>> 2. the Named Insured, any partner, shareholder, employee, or where appropriate the Named Insured's management committee or any member thereof, had no reasonable basis to believe that the Insured had breached a professional duty or to foresee that a claim would be made against the Insured; and
>>
>> 3. there is no prior policy or policies which provide insurance for such liability or claim, unless the available limits of liability of such prior policy

or policies are insufficient to pay any liability or claim in which event this policy will be excess over any such prior coverage, subject to this policy's term limits of liability, exclusions and conditions.

Reliance contends that the ALPS policy is a "prior policy" under subsection (b)(3) of the coverage provision, and that the Reliance policy therefore provides only excess coverage in the event that the ALPS policy limits are exhausted. To determine the meaning of "prior policy," the Court must first analyze the dates referred to in the prefatory clause to subsection (b)(3). The Reliance policy period started on May 8, 1992. May 8, 1991 was the effective date of the first lawyers professional liability policy which Reliance issued to the Davis Wright firm. Accordingly, subsection (b)(3) of the Reliance policy affords coverage for claims arising out of acts, errors, or omissions that happened before May 8, 1992, provided that before May 8, 1991, "there is no prior policy or policies which provide insurance for such liability or claim...." Although the policy language may be inartful, it is not ambiguous. The exception to coverage applies if a policy issued prior to May 8, 1991 provides insurance for the specific claim.[1]

The Court rejects the argument that subsection (b)(3) operates to guarantee that Reliance has only excess liability when new insureds are added to a policy and that the term "prior policy" refers to any policy which issued before June 15, 1992, when Wilson's coverage with Reliance became effective. It might be reasonable for an insurance carrier to structure a policy in this fashion, but Reliance did not do so. Nothing in the Reliance policy suggests that in subsection (b)(3) the term "prior policy" should have one meaning relative to insureds who are added during the policy period and another meaning for insureds who are covered from the beginning of the policy period. In the Reliance policy, the date which determines if a policy is "prior" is "the effective date of the first Lawyers Professional Liability Insurance Policy issued by this company to the named insured or predecessor law firm." If Reliance intended a different date to apply where an insured was added during the policy period, it could have specifically so stated.

■ Reliance contends that even if the coverage exception applies only to policies which issued before May 8, 1991, the applicable ALPS policy issued on May 1, 1988 and therefore operates to defeat primary coverage. *See Defendant Reliance Insurance Company's Memorandum In Support Of Its Motion For Summary Judgment On Its Counterclaim For Declaratory Judgment* (Doc. # 56) filed May 30, 2000 at 19–20. The Court disagrees. The renewal of an insurance policy for a specified period (here, one year) is a separate and distinct contract. *See Kane v. American Ins. Co.*, 52 Conn.App. 497, 725 A.2d 1000, 1002 (1999); *Hercules Bumpers, Inc. v. First State Ins. Co.*, 863 F.2d 839, 842 (11th Cir.1989) ("It is a basic tenet of insurance law that each time an insurance contract is renewed, a separate and distinct policy comes into existence."); *Government Employees Ins. Co. v. United*

---

1. Alternatively, the Court finds that the "prior policy" language in subsection (b)(3) is ambiguous and should be construed in favor of the insured. *See Farm Bureau*, 248 Kan. at 659–60, 810 P.2d at 285–86. If Reliance had intended to limit clause (b)(3) to other policies issued prior to the date a particular insured was added to the policy, as it now claims, it could have so specified. *See Smith v. Neumann*, 289 Ill.App.3d 1056, 225 Ill.Dec. 168, 682 N.E.2d 1245, 1252 (1997); *see also Farm Bureau*, 248 Kan. at 659, 810 P.2d at 286 ("Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured."); *St. Paul Fire & Marine Ins. Co. v. MetPath, Inc.*, 38 F.Supp.2d 1087, 1093–95 (D.Minn.1998) (if insurer intended different "effective date" to apply to each insured added during policy period, it should have specifically defined term in policy).

*States,* 400 F.2d 172, 174–75 (10th Cir. 1968) (renewal of insurance policy constitutes separate contract); *see also* 13A John Alan Appleman *et al.,* Insurance Law and Practice § 7648 at 450 (1976) ("A renewal contract has been stated by many jurisdictions to be a new, and a separate and distinct contract, unless the intention of the parties is shown clearly that the original and renewal agreement shall constitute one continuous contract."). *But see Rouse Co. v. Federal Ins. Co.,* 991 F.Supp. 460, 465 n. 3 (D.Md.1998). Although the precise terms of each policy may depend on the language of the original ALPS policy, *see Government Employees,* 400 F.2d at 175, each successor ALPS policy was effective for only one year and included a specific "expiration date." The liability limits also applied separately to each policy period, which suggests that the parties did not intend that the annual renewal constituted a continuation of the original contract. Moreover, in June 1992, Lund did not simply renew the previous ALPS policy, he requested a change in coverage based on Wilson's departure from the firm. In response, ALPS canceled the policy which was effective May 1, 1992 to May 1, 1993 and issued a new one effective June 13, 1992 to June 13, 1993. In such circumstances, the subsequent policy is a distinct policy rather than a continuation of the previous one. Accordingly, the applicable ALPS policy issued on June 13, 1992, after the effective date of the first Reliance policy issued to the Davis Wright law firm.

In sum, the Court finds as a matter of law that the applicable ALPS policy issued June 13, 1992 and that the "prior policy"

exception in subsection (b)(3) does not defeat primary coverage under the Reliance policy.

**B. Waiver—Estoppel**

■ Reliance argues that ALPS has waived its claim that Reliance is a co-insurer or primary insurer because it did not tender Wilson's defense to Reliance in 1993, when it first learned of the Hessenflow claim. Reliance is not entitled to summary judgment, however, on this claim. First, "[w]aiver implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right." *Schraft v. Leis,* 236 Kan. 28, 36, 686 P.2d 865, 873 (1984). Reliance has not shown that in 1993, ALPS knew of its right of contribution from Reliance and intentionally gave up that right. Viewing the evidence in the light most favorable to ALPS, it did not know about the Reliance policy until March 1999. Also, Reliance does not cite any authority for its argument that an insurer is barred from seeking contribution from a co-insurer unless the insured has first tendered the claim to the co-insurer. The parties do not refer to any specific policy provisions which address the issue, but the *insured* generally is required to tender a claim to all insurers which the insured wants to respond to the claim. [2]

*See* 14 Couch On Insurance 3d § 200.40 (Rev.1999). Some jurisdictions allow an insurer to obtain contribution from a co-insurer if the insurer previously gave "notice" to the co-insurer of a potential contri-

---

**2.** In the pretrial order, Reliance argues that ALPS and Wilson are estopped from claiming that Reliance is a co-insurer or a primary insurer because prior to April 1999, Wilson had never demanded that Reliance participate in the defense or settlement of the Hessenflow claim. *See Pretrial Order* (Doc. # 54) filed May 24, 2000 at 10–11. In their briefing, neither party has addressed whether Wilson "tendered" the Hessenflow claim to Reliance under Kansas law, whether she may be excused from the tender requirement, whether

she "deactivated" any previous tender of her claim, *see Alcan United, Inc. v. West Bend Mut. Ins. Co.,* 303 Ill.App.3d 72, 236 Ill.Dec. 560, 707 N.E.2d 687 (1999), whether the tender requirement applies where the insured changes her mind before settlement of the underlying claim, or whether Kansas courts would impose such a tender requirement in a contribution action between co-insurers. Absent briefing on the issues, the Court declines to decide them on the present record.

bution claim. *See Truck Ins. Exchange v. Unigard Ins. Co.*, 79 Cal.App.4th 966, 94 Cal.Rptr.2d 516, 527 (2000). In their briefing, neither party has addressed the scope of an insurer's duty to investigate the availability of other insurance, *cf. Casualty Indem. Exchange Ins. Co. v. Liberty Nat'l Fire Ins. Co.*, 902 F.Supp. 1235, 1240 (1995) (insurer has affirmative duty to inquire about other applicable insurance); *American Star Ins. Co. v. Allstate Ins. Co.*, 12 Or.App. 553, 508 P.2d 244, 250 (1973) (same), whether notice by an insured to a co-insurer is sufficient to relieve the insurer of any notice obligation, or whether Kansas courts would adopt a notice requirement as a prerequisite to an equitable contribution claim against a co-insurer. Finally, neither party has addressed whether failure to tender the Hessenflow claim before April 1999 might bar all recovery by ALPS or only recovery of defense costs incurred before that date.

In support of its waiver argument, Reliance argues that ALPS is not a third-party beneficiary of the insurance contract between Wilson and Reliance. *See Defendant Reliance Insurance Company's Memorandum In Support Of Its Motion For Summary Judgment On Its Counterclaim For Declaratory Judgment* (Doc. # 56) filed May 30, 2000 at 27 (citing *Institute of London Underwriters v. Hartford Fire Ins. Co.*, 234 Ill.App.3d 70, 175 Ill. Dec. 297, 599 N.E.2d 1311 (1992)). In *Institute of London*, the court held that under Illinois law, an insurer may not seek equitable contribution from a co-insurer unless the insured has tendered the claim to the co-insurer. *See id.* at 1317. The court restricted this rule, however, to sophisticated insureds. *See id.* The Illinois Supreme Court later held that "irrespective of the level of sophistication, except where the insured has knowingly foregone the insurer's assistance," actual notice of a claim triggers the insurer's duty to defend. *Cincinnati Cos. v. West Am. Ins. Co.*, 183 Ill.2d 317, 233 Ill.Dec. 649, 701 N.E.2d 499, 504 (1998). In other words, an insured may choose to tender the defense to one insurer alone and effectively preclude that insurer from seeking equitable contribution from any co-insurers. *See John Burns Constr. Co. v. Indiana Ins. Co.*, 189 Ill.2d 570, 244 Ill.Dec. 912, 727 N.E.2d 211, 217 (2000). The parties have not presented a sufficient factual record for the Court to conclude as a matter of law whether Wilson has knowingly foregone the assistance of Reliance. Additionally, the parties have not addressed whether Kansas courts would adopt the above rule. The Court therefore must overrule Reliance's motion on this issue.

Reliance also argues that ALPS is estopped from seeking equitable contribution because it completely controlled the defense of the Hessenflow claim. "Equitable estoppel is the effect of the voluntary conduct of a party that precludes that party, both at law and in equity, from asserting rights against another who relies on such conduct. A party seeking to invoke equitable estoppel must show that the acts, representations, admissions, or silence of another party (when it had a duty to speak) induced the first party to believe certain facts existed. There must also be a showing the first party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 382–83, 855 P.2d 929, 937 (1993). As explained above, Reliance has not shown that under Kansas law, ALPS had a duty to inform it of a potential contribution claim when ALPS received notice of the underlying claim against Wilson. Reliance also has not shown that it rightfully relied on the silence of ALPS. ALPS did not learn of the Reliance policy until March 1999, and before that date Reliance was in the best position to review its own policy and determine whether it should cover the claim.

Finally, Reliance maintains that doctrines of waiver and estoppel bar the contribution claim because ALPS provided Wilson a defense in the underlying suit without a reservation of rights. "[U]nder

the general rule a liability insurer which assumes the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, it clearly disclaims liability under the policy, and gives notice of its reservation of a right to set up the defense of noncoverage." *First Fin. Ins. Co. v. Bugg,* 265 Kan. 690, 708, 962 P.2d 515, 527 (1998). "The purpose of a reservation of rights is to afford the insured a defense while protecting the rights of the carrier when the duties to defend and indemnify cannot clearly be determined. It allows both parties to the insurance contract the protection bargained for in connection with the third party suit and reserves coverage issues to a more appropriate forum and time." *Truck Ins. Exchange v. Superior Ct. of Los Angeles Cty.,* 51 Cal.App.4th 985, 59 Cal.Rptr.2d 529, 536 (1996). A reservation of rights is essentially an agreement between the insurer and the insured which allows the insurer to provide a defense while reserving its rights to later deny coverage or assert policy defenses. *See Bogle v. Conway,* 199 Kan. 707, 712–13, 433 P.2d 407, 411–12 (1967). Indeed, the agreement of the insured, either express or implied, is necessary for a valid reservation of rights. *See id.* Because a reservation of rights agreement is between the insurer and the insured, the insurer's failure to obtain such an agreement does not bar a contribution claim against a co-insurer. *See First Marine Ins. Co. v. Gibbs,* 173 F.3d 863, 1999 WL 176193, at *2 (10th Cir. Mar. 31, 1999) (generally, only insured has standing to argue estoppel based on failure of insurer to reserve rights; third parties may not raise issue unless they stand in same position of po-

tential prejudice as insured); *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 78 F.3d 202, 208 (5th Cir.1996) (failure to obtain reservation of rights does not waive claims against other insurers) (Texas law); *American General Fire & Cas. Co. v. Progressive Cas. Co.,* 110 N.M. 741, 799 P.2d 1113, 1117 (1990) (same). For these reasons, the Court rejects as a matter of law the Reliance defense of waiver and estoppel based on the ALPS failure to obtain a reservation of rights.

Because issues of fact remain on Reliance's other claims of waiver and estoppel, the Court overrules both motions for summary judgment on the issue of coverage under the Reliance policy.

## II. "Other Insurance" Clauses In ALPS And Reliance Policies

ALPS concedes that its policy provides coverage for the Hessenflow claim against Wilson.[3] Assuming that ALPS and Wilson are not estopped to claim coverage (issues which will be decided at trial), the Reliance policy also provides coverage for the same claim. Both policies contain an "other insurance" clause, however, which attempts to provide that each company's coverage is excess over any other valid and collectible insurance. The ALPS policy provides:

This insurance shall be excess of any other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over and above the limits of liability provided in this policy.

The Reliance policy provides:

Subject to the limitation of coverage as set forth in Section B COVERAGE I.(b)

---

**3.** In its reply brief, ALPS argues that if exclusion (j) in its policy applies, it has neither primary nor excess coverage for the claim against Wilson. Exclusion (j) states that the ALPS policy does not provide coverage if a prior policy provides insurance for a claim. This point might be well taken, as to Wilson. ALPS did not raise this argument in its initial memorandum, however, or in the pretrial order. Accordingly, the Court will not consider

it. *See* Fed.R.Civ.P. 16(e); D. Kan. Rules 7.1, 16.2(c); *Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 667 (10th Cir.1991) (pretrial order supersedes all pleadings and controls the subsequent course of the case); *Boilermaker–Blacksmith Nat'l Pension Fund v. Gendron,* 67 F.Supp.2d 1250, 1257 n. 4 (D.Kan.1999) (party is prohibited from raising new argument and issues in reply).

for prior insurance and Section B COVERAGE V for insurance procured subsequent to termination of practice, [4] this insurance shall be in excess of the amount of the applicable deductible of this policy and any other valid and collectible insurance available to the insured whether such insurance is stated to be primary, prorata, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific insurance over the limits of liability provided in the policy.

Reliance and ALPS each argue that the other's provision with respect to other insurance is ineffective. Reliance argues that because its policy is not valid and collectible insurance, the "other insurance" clause in the ALPS policy does not make the ALPS policy "excess insurance." As explained above, however, if ALPS and Wilson are not estopped to claim coverage, Wilson was covered under the Reliance policy. Accordingly, pursuant to the "other insurance" clause, the ALPS policy provides excess coverage for Wilson.

ALPS argues that the "other insurance" clause in the Reliance policy is not effective because it is "subject to the limitation of coverage ... for prior insurance." By a tortured reading of the Reliance policy, ALPS maintains that because the "other insurance" clause is "subject to" section B. I(b), the "other insurance" clause cannot limit or diminish that coverage which is established under section B. I(b). The Court disagrees. First, ALPS ignores the additional language of the prefatory phrase in the "other insurance" clause:

"subject to *the limitation of coverage.*" (emphasis added). This additional language shows that the "other insurance" clause, which is a limitation of coverage, is subject to (or in addition to) any **limitation** of coverage found in coverage sections B. I(b) and V. In other words, where the insured has not established coverage under one of the two coverage provisions (sections B. I(b) and V) which specifically relate to other insurance policies, the "other insurance" clause does not create coverage which would not otherwise exist by virtue of other valid and collectible insurance. The "subject to the limitation of coverage" language means that to the extent the insured has satisfied all conditions "set forth in Section B COVERAGE I.(b) for prior insurance and Section B COVERAGE V for insurance procured subsequent to termination of practice," the Reliance policy is excess to any other valid and collectible insurance. Accordingly, pursuant to the "other insurance" clause, the Reliance policy provides excess coverage for Wilson.

█ Given that both the Reliance and ALPS policies contain "other insurance" clauses which attempt to make their polices excess to any others, the Court finds that the two clauses are mutually repugnant and must be disregarded. *See Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.*, 232 Kan. 606, 611, 657 P.2d 576, 580 (1983). Assuming that ALPS and Wilson are not estopped to claim coverage under the Reliance policy, Reliance and ALPS are co-primary insurers of Wilson for the Hessenflow claim. See *id.*[5]

4. Section B Coverage V states that upon payment of an additional premium, Reliance will provide coverage for any insured who retires or ceases the private practice of law during the policy period for claims made following the expiration date of the policy. The section restricts coverage to claims "by reason of any act, error or omission in professional services rendered before the Insured's date of retirement or termination of private practice and otherwise covered by this insurance *PROVIDED there is no other insurance procured on or after the Insured's date of retirement or termination of practice which covers the Insured for*

*such liability or claim.*" (emphasis added). It also stipulates that "[s]uch other insurance shall render this coverage inapplicable, even though the limits of liability of such other insurance may be inadequate to pay all losses and claim expenses and/or the deductible amount and deductible provisions of such other insurance may be different from those of this policy."

5. The Court need not further discuss whether the Reliance coverage is excess under the express language of section B. I(b)(3). The "other insurance" provision in that section is

## III. Reliance Claim Of Bad Faith Failure To Settle Within Policy Limits

 Reliance claims that ALPS is obligated to pay claims in excess of its policy limits because of its bad faith failure to settle the Hessenflow claim. An insurer who assumes the defense of a claim owes to the insured the duty to act in good faith and without negligence. *See Bollinger v. Nuss*, 202 Kan. 326, 333–34, 449 P.2d 502, 508–09 (1969). "An insurance company may become liable for an amount in excess of its policy limits if it fails to act in good faith and without negligence when defending and settling claims against its insured." *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79, 85 (1990). "The conduct of the insurer must not be viewed through hindsight. Instead, the offer and the strength of the plaintiff's case must be viewed as they fairly appeared to the insurer and its agents and attorneys at the time the offer was refused." *Id.* A primary insurer owes a similar duty of good faith to excess insurers. *See Pacific Employers Ins. v. P.B. Hoidale Co., Inc.*, 789 F.Supp. 1117, 1121 (D.Kan.1992) (excess insurer may assert bad faith claim against primary insurer under principles of equitable subrogation); *Westchester Fire Ins. Co. v. General Star Indem. Co.*, 183 F.3d 578, 583 (7th Cir.1999) (excess insurer may assert insured's right to insist that primary insurer use due care to avoid excess judgment) (Illinois law).

Reliance asks for summary judgment based solely on the fact that ALPS rejected a $485,000 demand by the Hessenflow heirs. Reliance has not presented any evidence regarding the merits of the Hessenflow claim or the reasonableness of the ALPS decision to reject the demand. Moreover, the Hessenflow claim has not been resolved. The Court therefore overrules Reliance's motion for summary judgment on its bad faith claim.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion For Summary Judgment* (Doc. # 49) filed May 16, 2000 be and

hereby is **SUSTAINED in part** and **OVERRULED in part**. The Court finds as a matter of law that no policy of insurance issued prior to May 8, 1991 provides insurance for the Hessenflow claim and that the "prior policy" provision in section B. I(b)(3) of the Reliance policy does not exclude coverage under the Reliance policy.

**IT IS FURTHER ORDERED** that *Reliance Insurance Company's Motion For Summary Judgment* (Doc. # 55) filed May 30, 2000 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that on or before **September 14, 2000,** the parties shall show cause in writing why the Court should not dismiss or stay the parties' remaining claims (other than Reliance's estoppel and waiver claims) for lack of a substantial controversy which is sufficient to warrant the issuance of a declaratory judgment.

---

limited to "prior" policies and, as the Court has determined above, the ALPS policy in this

case is not a "prior" policy for purposes of section B. I(b)(3).