FIFTH DIVISION

No. 1-08-3529

| | | |
|---|---|---|
| RIVER VILLAGE I, LLC, a/k/a River Village, LLC, and HARLEYSVILLE LAKE STATES INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants and Cross-Appellees, | ) ) | |
| v. | ) ) | No. 06 CH 11597 |
| CENTRAL INSURANCE COMPANIES, | ) ) | The Honorable James Epstein, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge Presiding. |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiffs-appellants and cross-appellees River Village I, LLC, a/k/a River Village, LLC (River Village or plaintiffs), and Harleysville Lake States Insurance Company (Harleysville or plaintiffs) brought a declaratory judgment action against defendant-appellee and cross-appellant Central Insurance Companies (Central) seeking defense and indemnification. Following cross-motions for summary judgment, the trial court held in favor of Central, finding it was not required to cover River Village pursuant to a certain insurance policy. Plaintiffs moved for reconsideration and the trial court denied their motion. Plaintiffs appeal from both orders, contending that the court erred in granting summary judgment to Central and in denying their motion for reconsideration. They ask that we reverse these orders and remand the cause for further consideration. For the following reasons, we affirm.

BACKGROUND

In 2004, River Village was the general contractor on a building project, with Harleysville as its primary insurer. River Village hired First Choice Drywall (First Choice) to perform

subcontracting work at the project site. A contract between River Village and First Choice required First Choice to name River Village as an additional insured on its insurance policy for defense and indemnification purposes. This contract did not specify what type of insurance, *i.e.*, primary or excess, First Choice was required to obtain for River Village, but only that First Choice was to "indemnify and hold harmless" River Village for any and all claims and "pay for and maintain" such insurance as agreed to by the parties.

Pursuant to this contract, First Choice added River Village as an additional insured to the commercial general liability insurance policy it had with its insurer, Central. This Central policy contained an "other insurance" excess provision, stating, in pertinent part:

> "**B. Additional Insured – Automatic Status (not applicable to Employee Benefits Liability Coverage)**
>
> > **1. Section II – WHO IS AN INSURED** is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy \*\*\*.
> >
> > \*\*\*
> >
> > **3.** As respects the coverage \*\*\* provided under the General Liability Plus **Section IV – Commercial Liability Conditions**, Paragraph **4.b.2)** is amended with the addition of the following:
> >
> > **4. Other insurance – Excess Insurance**
> >
> > > \*\*\*
> > >
> > > b. 2) This insurance is excess over:

> Any other valid and collectible insurance available to the
> additional insured whether primary, excess, contingent or on
> any other basis unless a contract specifically requires that
> this insurance be either primary or primary and
> noncontributing."

The policy also contained an amendment of primary and excess provision endorsement, which reiterated paragraph 4.b.2) by stating:

> "Any coverage provided hereunder shall be excess over any other valid and
> collectible insurance available to the additional insured whether primary, excess,
> contingent or on any other basis unless a contract specifically requires that this
> insurance be either primary or primary and noncontributing."

In addition, the certificate of insurance issued to River Village by Central for the policy stated that River Village would be "added as primary additional insured if required by written contract on the above general liability policy."

In March 2004, Ricky Roche, an employee of First Choice, was injured while working at the project site. He brought suit against, among others, River Village. In October 2005, River Village tendered its defense in the suit to First Choice, noting that it was instructing its insurer, Harleysville, not to respond to the suit or provide coverage unless and until the policy River Village had with Central through its contract with First Choice was exhausted. When Central did not respond, River Village tendered its defense directly to it in February 2006; River Village made a second tender in April 2006.

In June 2006, River Village brought a declaratory judgment and breach of contract action against Central, claiming that Central owed it a defense in the Roche litigation. Central responded by denying tender, filing an answer and bringing its own counterclaim for declaratory judgment against River Village. There were several bases for Central's counterclaim, including that River Village was not a proper party, the contract between River Village and First Choice covered only certain individuals and not River Village as a business entity, a bodily injury exclusion applied, and Central's insurance was only excess to the primary policy River Village maintained with Harleysville.

As litigation progressed, Central requested, as part of discovery, that River Village provide the name of any individual who conducted an investigation relative to River Village's claim for insurance coverage under any policy other than Central's, as well as a copy of all insurance policies covering River Village for any work performed at the project site, which would have included the Harleysville policy. River Village objected to these requests as "irrelevant and immaterial," stating that they were "calculated to harass and seek[] information not calculated to be admissible at trial as [they] seek[] information unrelated to this litigation." Accordingly, River Village did not provide Central with a copy of its Harleysville policy.

River Village and Central then filed cross-motions for summary judgment. Addressing these, the trial court partially held in favor of River Village by finding that it was a proper party, the contract did intend to cover it as an additional insured, and the bodily injury exclusion did not apply. However, the court found that there was a genuine issue of material fact as to whether Central's insurance policy was primary or only excess as to River Village and, therefore, remanded

the matter.

Meanwhile, the Roche litigation settled and that cause was dismissed; Harleysville paid out on the claim on behalf of River Village, which was within its policy limits. Accordingly, the trial court allowed River Village to file a second amended complaint in the Central litigation to add Harleysville as a party plaintiff. The court also granted the parties leave to file new cross-motions for summary judgment, specifically and solely on the issue of whether Central's policy was primary or only excess as to River Village's policy with Harleysville.

On October 15, 2008, the court held oral argument on these cross-motions, during which it noted that the contract between River Village and First Choice requiring the latter to obtain insurance for the former did not contain language specifying that the insurance be primary. The court asked plaintiffs to produce a copy of the Harleysville policy, which had not been submitted into evidence, so it could examine whether that policy contained a provision similar to paragraph 4.b.2) in the Central policy regarding excess other insurance:

"THE COURT: The question I have is: Do we have the Harleysville policy?

[CENTRAL]: I requested that in written discovery.

THE COURT: All right. So the question I have is: Is there a dueling excess clause in the Harleysville policy?

***

Why haven't we seen that policy?

[PLAINTIFFS]: Because, your Honor, based on our review of the case

5

No. 1-08-3529

law, the Harleysville policy and its contents, including its other-insurance clause, is irrelevant."

In relation to this, the court referred to Ohio Casualty Insurance Co. v. Oak Builders, Inc., 373 Ill. App. 3d 997 (2007), which neither party had discussed. The court mentioned that this case dealt with competing "other insurance" clauses in policies concurrently held by an insured and noted its holding that these could cancel each other out and may render co-insurers liable for coverage. Following further commentary, the court announced that it would issue its ruling in November 2008.

On October 24, 2008, plaintiffs filed a motion to supplement the record with a discussion of Ohio Casualty, in response to the oral argument. However, neither plaintiff provided the court with a copy of the Harleysville policy.

On November 17, 2008, the trial court issued its memorandum opinion and order granting Central's motion for summary judgment. The court discussed the cases cited by plaintiffs, along with their reliance on the Illinois targeted tender rule, and found them to be inapposite and inapplicable to the instant facts. Instead, again noting that it was "undisputed" that the contract between River Village and First Choice was "completely silent regarding the type of insurance, *i.e.* excess or primary, First Choice [had] to provide," and that there was no other agreement requiring that the Central policy be primary, the court held that the "unambiguous language" of paragraph 4.b.2) providing that primary coverage was to be triggered only if stated by written contract rendered the Central policy excess to the Harleysville policy. Accordingly, the court denied plaintiffs' motion for summary judgment.

6

No. 1-08-3529

Plaintiffs filed a motion for reconsideration. Attaching for the first time a copy of the Harleysville policy, they argued that the trial court misapplied the Illinois targeted tender rule and that it should consider the language of the Harleysville policy, since its relevance was only raised during oral argument by the court. However, the trial court found that it would be inappropriate to consider the policy as it was not newly discovered evidence. The court stated that it had "basically begged" plaintiffs to provide it with a copy of the Harleysville policy, which it had made clear during oral argument and in its written decision was "pertinent" and "very relevant" to the instant cause. Noting that plaintiffs "had control of evidence that [they] decided not to submit" for strategic and tactical purposes, the court concluded it could not consider it now and, thus, denied their motion.

ANALYSIS

As noted above, River Village and Harleysville appeal from both the trial court's November 17, 2008 order granting Central's motion for summary judgment (and denying their motion for same) and the court's denial of their motion for reconsideration. We address each in turn.

I. Cross-Motions for Summary Judgment

Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Hall v. Henn, 208 Ill. 2d 325, 328 (2003); Morris v. Margulis, 197 Ill. 2d 28, 35 (2001). While this relief has been called a "drastic measure," it is an appropriate tool to employ in the expeditious

7

No. 1-08-3529

disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " Morris, 197 Ill. 2d at 35, quoting Purtill v. Hess, 111 Ill. 2d 229, 240 (1986). Appellate review of a trial court's grant of summary judgment is *de novo*. See Hall, 208 Ill. 2d at 328; accord Rich v. Principal Life Insurance Co., 226 Ill. 2d 359, 370 (2007).

Plaintiffs first contend that the trial court erred in granting Central's motion for summary judgment and denying theirs because it is obvious that Central was required to provide defense and indemnification for River Village in the Roche litigation. They cite a series of construction-contract insurance cases, including Institute of London Underwriters v. Hartford Fire Insurance Co., 234 Ill. App. 3d 70 (1992), Bituminous Casualty Corp. v. Royal Insurance Co. of America, 301 Ill. App. 3d 720 (1998), Alcan United, Inc. v. West Bend Mutual Insurance Co., 303 Ill. App. 3d 72 (1999), and John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d 570 (2000), in which insureds who maintained concurrent insurance policies with multiple insurers were legally able to appoint which insurer would provide defense and indemnification upon a loss. Following these, plaintiffs argue that their targeted tender to Central prohibits any consideration of the "other insurance" excess provision found in paragraph 4.b.2) of the Central policy and, thus, that Central cannot escape liability.

Plaintiffs are correct in their general description of the targeted tender rule and in their citation to the cases mentioned.[1] The targeted tender doctrine allows an insured who is covered by multiple and concurrent insurance policies to select, or "target," which insurer he wants to

---

[1] We do wish, however, to note for the record that this line of cases, beginning with London, has been called into question and, in some cases, rejected by several Illinois courts.

8

defend and indemnify him regarding a specific claim. See London, 234 Ill. App. 3d at 78-79. The insured essentially can choose which insurer among his several co-insurers will participate in the claim against him; he can elect one insurer over another, or even deactivate coverage with an insurer he previously selected in order to invoke exclusive coverage with another. See London, 234 Ill. App. 3d at 78-79; see also Alcan, 303 Ill. App. 3d at 83. This allows an insured who has paid for multiple coverage to protect his interests, namely, keeping future premiums low, optimizing loss history and preventing policy cancellation among the insurers he chooses. See London, 234 Ill. App. 3d at 78-79; accord Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 326 (1998).

In an effort to override this right of the insured to choose among co-insurers, insurers developed "other insurance" excess provisions in their policies. These provisions attempt to render otherwise primary insurance as excess over any other collectible insurance, most often with statements in the policy that declare the insurer's coverage to be excess over any other valid and collectible insurance available to the insured. See Progressive Insurance Co. v. Universal Casualty Co., 347 Ill. App. 3d 10, 20 (2004) . In such instances, the "other insurance" excess provision requires the insured to exhaust the policy limits of the other co-insurers before being able to trigger a defense and indemnification duty in that insurer. See, *e.g.*, Progressive, 347 Ill. App. 3d at 20.

In the ensuing battle between the doctrine of targeted tender used by an insured to obtain his selected primary coverage and the application of "other insurance" excess provisions used by insurers to invoke only excess coverage, the question arose as to which should prevail. As in the

9

series of cases plaintiffs here cite, our courts have held that, when an insured has maintained concurrent primary insurance among multiple insurers, the presence of an "other insurance" excess provision in one insurer's policy does not, in and of itself, overcome the insured's right of targeted tender. See John Burns, 189 Ill. 2d at 578 ("other insurance" provision alone does not defeat insured's right to target tender defense to one particular insurer among class of primary co-insurers), citing Alcan, 303 Ill. App. 3d at 82-83 (in situation where one is insured by multiple insurers on primary bases, insured's right to choose or not to choose certain insurer's participation in claim is "paramount"), and Bituminous, 301 Ill. App. 3d at 725-26 (insured can knowingly forego assistance from one primary insurer in favor of requesting exclusive coverage from different primary co-insurer, despite "other insurance" clause in that insurer's policy).

Again, the common and determinative element shared by these cases is that, in each, the insurance at issue--that held by the insured and provided by his multiple insurers--originated from primary policies. In other words, all the insurers stood in the same position with respect to the potential duty of defense and indemnification owed to the insured. It is in this situation, where the concurrent multiple policies held are primary policies, that the targeted tender rule prevails and allows the insured to select which insurer will defend and indemnify him.

However, this is not always the case. Recently, our courts, including our state supreme court, recognized that a markedly different situation occurs when an insured is covered by multiple insurers providing different types of coverage. That is, policies concurrently held by an insured are not always all primary; an insured may hold primary insurance from one insurer and, at the same time, excess coverage from another. In this instance, when the insurers do not stand in

the same position with respect to a potential duty of coverage, our courts have clearly held that an insured cannot use his targeted tender right to choose to impose a coverage duty on an insurer with an "other insurance" excess provision in its policy to the exclusion of other co-insurers with which he holds primary policies. See Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co., 227 Ill. 2d 102, 117 (2007); see, *e.g.*, State Automobile Mutual Insurance Co. v. Habitat Construction Co., 377 Ill. App. 3d 281 (2007).

In Kajima, general contractor Kajima entered into a subcontract with Midwestern Steel Fabricators, Inc., which required Midwestern to add Kajima as an additional insured on the commercial general liability insurance policy it held with St. Paul. Midwestern did so, obtaining an umbrella, or excess, policy for Kajima; Kajima, meanwhile, retained its own primary insurance with its insurer, Tokio Marine and Fire Insurance Company. When an employee was injured at the project site and sued Kajima, Kajima made a targeted tender to Midwestern and St. Paul for defense and indemnity, rather than to Tokio.

Citing the same cases plaintiffs reference in the instant cause, our supreme court in Kajima specifically noted that none of these were "on point" because they did not involve excess insurance policies, such as the umbrella policy Midwestern had obtained for Kajima. See Kajima, 227 Ill. 2d at 107-12 (examining London, Bituminous, Alcan and John Burns and stating that "our prior decisions addressing targeted tender are not entirely on point, as those cases did not involve excess insurance policies" but only concurrent primary policies). Rather, as the court made clear, this situation provided a different context--an insured (Kajima) holding different types of concurrent insurances, *i.e.*, primary (from Tokio) and excess (St. Paul's umbrella policy). See

11

Kajima, 227 Ill. 2d at 112 (examining cause "in the context of primary and excess insurance").

The issue became, then, whether the targeted tender rule would still dominate an excess insurer's

right to force exhaustion of all primary insurances before its duty would be triggered. See

Kajima, 227 Ill. 2d at 113.

Our supreme court answered this question in the negative. It found that there is an

evident distinction between primary and excess insurance: excess insurance "provides a secondary

level of coverage" and is triggered only after the limits of primary insurance have been exhausted.

Kajima, 227 Ill. 2d at 114 (in contrast to primary insurance, excess insurance premiums are lower

precisely because this secondary coverage is not to be collected unless and until the limits of the

insured's primary coverage are exhausted). With this distinction, then, the court refused to extend

the targeted tender doctrine to allow an insured to request the application of an excess policy

before he exhausts all his primary coverage:

> "[W]e find that the better rule is that *** targeted tender can be applied to
> circumstances where concurrent primary insurance coverage exists for additional
> insureds, but to the extent that defense and indemnity costs exceed the primary
> limits of the targeted insurer, the deselected insurer or insurers' primary policy
> must answer for the loss before the insured can seek coverage under an excess
> policy." Kajima, 227 Ill. 2d at 116-17.

Accordingly, despite its targeted tender to St. Paul, Kajima was first required to exhaust the limits

of its primary policy with its own insurer, Tokio, before it could legally invoke coverage under the

St. Paul policy. See Kajima, 227 Ill. 2d at 117.

Our own court applied the same legal principles in State Automobile, where we, too, were confronted with an insured holding concurrent insurance of varying degrees. There, general contractor Habitat and subcontractor Central Building & Preservation agreed that Central Building would add Habitat as an additional insured on its commercial general liability policy with State Automobile Mutual Insurance Company; Habitat, meanwhile, retained primary insurance with its own insurer, Pennsylvania General Insurance Company. The State Auto policy, though not an excess insurance umbrella policy as in Kajima, contained an "other insurance" excess provision which attempted to render it an excess policy. That provision stated:

> "Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless a contract specifically requires that this insurance be non-contributory and or primary or you request that it apply on a non-contributory and or primary basis." State Automobile, 377 Ill. App. 3d at 283.

During construction, an employee was injured at the project site and sued Habitat. Instead of turning to its own primary insurer, Habitat made a targeted tender upon State Auto for defense and indemnification. State Auto rejected this and sought a declaratory judgment that it was not required to provide coverage until Habitat exhausted its primary policy with Pennsylvania General, since there was never a request to make its coverage noncontributory or primary pursuant to the "other insurance" provision. Habitat responded that the State Auto policy was indeed primary because of the targeted tender rule.

Upon review, we agreed with State Auto. We, too, examined the same series of cases cited by plaintiffs here and discussed the targeted tender rule. See State Automobile, 377 Ill. App. 3d at 293. However, citing Kajima's distinction between primary and excess policies held concurrently, we reiterated its holding that an insured cannot selectively tender a defense to his excess insurer while primary coverage remains unexhausted. See State Automobile, 377 Ill. App. 3d at 293. Accordingly, we concluded that Habitat could not target tender its defense to State Auto where the State Auto "policy's 'other insurance' provision states the policy is to apply in 'excess over any other valid and collectible insurance available to' Habitat." State Automobile, 377 Ill. App. 3d at 293.[2]

Turning to the instant cause, plaintiffs' entire argument rests on the conclusion, which they consistently maintain on appeal, that the Central policy is a primary one and that, accordingly, Central and Harleysville were concurrent primary co-insurers of River Village. Upon this presumption, they assert that their targeted tender of the Roche litigation to Central should rule their defense and indemnification. We wholeheartedly disagree, as it is quite clear that the situation at issue here does not involve concurrent primary insurers as in London and its progeny but, rather, concurrent primary and excess insurance as in Kajima and State Automobile.

As noted earlier, the Central policy contains an "other insurance" excess provision, namely, paragraph 4.b.2), which is similar to that found in State Automobile. Again, that

_____

[2]Because it was unclear in the record, the cause was remanded to determine whether Habitat had any primary insurance "available to" it. See State Automobile, 377 Ill. App. 3d at 293 ("the record discloses no information about any such policy").

14

provision mandates that Central's insurance is excess over:

> "Any other *valid and collectible* insurance available to [River Village] whether primary, excess, contingent or on any other basis *unless a contract specifically requires that this insurance be either primary or primary and noncontributing*." (Emphasis added.)

The words in this provision are clear and unambiguous: unless there is a contract specifically requiring that Central's insurance be primary, its coverage of River Village is only excess over and above any other insurance River Village would be able to collect in the event of a loss. See American Family Mutual Insurance Co. v. Fisher Development, Inc., 391 Ill. App. 3d 521, 525 (2009) (if the words in an insurance policy are clear and unambiguous, a court must afford them their plain, ordinary and popular meaning); accord Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993).

The record makes clear that Harleysville has already paid out on, and completely satisfied, the Roche litigation as River Village's primary insurer. It did so upon settlement of that suit, and this is why Harleysville was permitted to join the instant action as a party plaintiff. From this, then, there can be no question that the Harleysville policy comprised "other valid and collectible insurance" available to River Village, as stated in paragraph 4.b.2). In addition, it remains undisputed, and plaintiffs admit on appeal, that the only contract at issue here--that between River Village and First Choice which set up the Central insurance policy--is completely silent regarding the type of insurance (primary or excess) First Choice was to obtain for River Village. Therefore, there is no contract requiring that Central's insurance covering River Village be "primary or

15

primary and noncontributing." Pursuant to paragraph 4.b.2), then, without such "a contract specifically" requiring that the insurance First Choice was to obtain from Central for River Village be primary, the Central policy is an excess insurance policy to the primary policy River Village held with Harleysville.

This is further supported by the endorsement and certificate of insurance that were part of Central's policy coverage of River Village, also found in the record. As we noted earlier, the endorsement reiterated paragraph 4.b.2) of the Central policy, using the same language found there to warn River Village that any coverage under the policy "shall be excess" over any other valid and collectible insurance available to it in case of a loss unless a contract existed stating that this insurance would be primary. Thus, the same condition precedent to full primary coverage, namely, a contract dictating this, was clearly stated for a second time in the policy. Moreover, the certificate of insurance accompanying the policy stated that River Village would be considered a "primary additional insured if required by written contract." Again, the condition precedent to full primary coverage is clear and, in the absence of such a written contract naming it a primary insured, Central's policy coverage of River Village was only excess.

From this, it becomes obvious that the targeted tender doctrine used in London and its progeny, all of which involved concurrent primary insurers, is inapplicable to the instant cause. Rather, River Village maintained concurrent insurance of varying degrees: primary coverage with Harleysville and excess coverage with Central. Therefore, and contrary to plaintiffs' assertions, the legal precedent of Kajima and State Automobile is more on point with the instant cause.

Therefore, we find no error in the trial court's grant of summary judgment in favor of

Central and its denial of plaintiffs' motion for same. Pursuant to the above analysis, the Central policy required River Village to first exhaust the primary insurance it held with Harleysville before it could trigger the excess coverage it held with Central. Because the Roche litigation was completely satisfied within the limits of the Harleysville policy, there remained no claim in excess. Accordingly, the Central policy was not triggered, and plaintiffs' attempt at targeted tender and suit for reimbursement from Central must fail. See Kajima, 227 Ill. 2d at 116-17; see, *e.g.*, State Auto, 377 Ill. App. 3d at 293.

## II. Motion for Reconsideration

Plaintiffs' second, and final, contention on review is that the trial court erred in denying their motion for reconsideration. They insist that the court should not have ignored the Harleysville policy they submitted with their motion because its relevance was only raised for the first time during oral argument and only by the court itself and not the parties. They further claim that, had the court examined the policy, it would have ruled in their favor since that policy contained an "other insurance" excess clause that would have rendered Central a primary insurer.

Generally, the denial of a motion to reconsider is reviewed *de novo*. See Compton v. Country Mutual Insurance Co., 382 Ill. App. 3d 323, 330 (2008) (this standard applies when denial is based on trial court's application of existing law). However, where, as here, the denial is based on new matters, such as additional facts or new arguments that were not previously presented during the course of proceedings leading to the order being challenged, we are to employ an abuse of discretion standard of review. See Delgatto v. Brandon Associates, Ltd., 131 Ill. 2d 183, 195 (1989); accord Compton, 382 Ill. App. 3d at 330.

17

No. 1-08-3529

The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts at hand. See Gardner v. Navistar International Transportation Corp., 213 Ill. App. 3d 242, 248 (1991); accord Weidner v. Midcon Corp., 328 Ill. App. 3d 1056, 1061 (2002). Accordingly, a trial court is well within its discretion to deny such a motion and ignore its contents when it contains material that was available prior to the hearing at issue but never presented. See Weidner, 328 Ill. App. 3d at 1061-62 (trial court's denial of motion to reconsider was proper because proponents presented no new evidence that was not available when court ruled on prior motion, nor did they raise claim of change in law); Gardner, 213 Ill. App. 3d at 248 (trial court was justified in disregarding contents of affidavit attached to motion to reconsider summary judgment ruling and in denying that motion solely on basis that this material was available prior to hearing on that motion but never presented). Litigants should not be allowed "to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." Gardner, 213 Ill. App. 3d at 248. Rather, "the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.) Gardner, 213 Ill. App. 3d at 248-49.

At the outset, we find that plaintiffs are incorrect in their statement that the relevance of the Harleysville policy was raised only during oral argument at the hearing on the cross-motions for summary judgment and only by the court itself and not the parties. First, the record reveals that during discovery in the litigation between Central and River Village, Central asked River

18

Village to provide the name of anyone who conducted an investigation relative to its claim for insurance under any policy other than Central's and for a copy of any insurance policies River Village held for work performed at the project site. This would clearly have included the Harleysville policy. However, instead of providing a copy of this policy, River Village objected and refused to produce it, claiming that it was "irrelevant and immaterial," "unrelated to this litigation," and "inadmissible" before the court.

Next, during the hearing on the cross-motions, the trial court communicated to the parties the legal principle that, if the Harleysville policy had an "other insurance" excess provision similar to the one in the Central policy, these could cancel each other out and River Village and Harleysville might have a valid legal basis for suit against Central to recover defense and indemnification expenses from the Roche litigation. The court made note that this was the holding of Ohio Casualty. Incidentally, this principle is also stated in Progressive, a case which plaintiffs cited throughout this litigation. See Progressive, 347 Ill. App. 3d at 20 ("where primary policies contain dueling excess 'other insurance' clauses, they cancel each other out and any loss may be prorated between companies as if they were co-primary insurers"). Plaintiffs, however, overlooked this legal argument in their favor and admitted to the trial court that they never provided a copy of the Harleysville policy to Central, nor to the court itself. Indeed, the record shows that they continued to insist, even after the trial court demanded to know why they had not provided it to Central or at the instant hearing, that the policy was "irrelevant" because River Village had made a targeted tender to Central. Again, plaintiffs did not submit a copy of the policy.

19

Finally, the record reveals that, before the date on which the trial court had stated it would render its decision on the cross-motions, plaintiffs filed a motion to supplement the record in response to the court's mention of Ohio Casualty and its applicability to the instant cause. However, instead of attaching a copy of the Harleysville policy to their motion at this time, plaintiffs again failed to do so. Ultimately, it was not until after the court rendered its decision on the cross-motions, making clear in its written memorandum that the submission of the Harleysville policy might have changed its verdict, that plaintiffs for the first time presented the policy and argued its applicability before the court.

From all this, we find that the trial court did not abuse its discretion in denying plaintiffs' motion for reconsideration. Undeniably, plaintiffs were well aware of the importance and relevance of the Harleysville policy in relation to this litigation--if not during the pretrial process, then surely at the oral argument on the cross-motions for summary judgment and most definitely before the trial court rendered its decision on those motions. Plaintiffs had at least three opportunities in which to submit the Harleysville policy, but consistently chose not to present it. The Harleysville policy can hardly be considered newly discovered or previously unavailable evidence. As the trial court stated in its colloquy during the motion to reconsider, it practically "begged" plaintiffs several times to submit the policy into evidence and made it obvious that it believed this evidence was "very relevant" to the issues at hand. Plaintiffs had control of this evidence but decided, pursuant to their strategy, not to submit it; unfortunately, this backfired on them as they chose to remove from the record the evidence they later sought to have the court analyze in their motion to reconsider. It would have been erroneous for the trial court to have

allowed them, after standing mute and losing their motion, to then present the Harleysville policy and argue upon reconsideration that the court's decision to grant summary judgment in favor of Central was incorrect because the court did not consider the provisions of the Harleysville policy.

Therefore, as plaintiffs simply failed to establish any ground[3] entitling them to reconsideration, we conclude that the trial court properly and within its sound discretion denied their motion.

CONCLUSION

Accordingly, for all the foregoing reasons, we affirm both the judgment of the trial court granting Central's cross-motion for summary judgment (and denying plaintiffs' motion for same), and its judgment denying plaintiffs' motion to reconsider.[4]

Affirmed.

TOOMIN, P.J., and HOWSE, J., concur.

---

[3]Plaintiffs also alleged in their motion for reconsideration that the trial court misapplied the law of targeted tender. While an assertion of the misapplication of existing law is a proper basis for such a motion (see Gardner, 213 Ill. App. 3d at 248; Weidner, 328 Ill. App. 3d at 1061), we have already concluded that the court properly applied the rule in reaching its decision.

[4]We note for the record that, were we to have reversed the trial court's holding, Central presented an alternative cross-appeal asserting trial court error regarding its previous decision finding that River Village was an additional insured under the Central policy. However, because we have affirmed this cause, we need not address Central's cross-appeal.

No. 1-08-3529

Please use the following

form

River Village I, LLC, a/k/a River Village, LLC, and Harleysville Lake States Insurance Company,

Plaintiffs-Appellants and Cross-Appellees,

v.

Central Insurance Companies,

Defendant-Appellee and Cross-Appellant.

Docket No.

COURT

Opinion

Filed

No. 1-08-3529

Appellate Court of Illinois

First District, FIFTH Division

November 20, 2009

(Give month, day and year)

JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:

JUSTICES

TOOMIN, P.J., and HOWSE, J., concur.

APPEAL from the Circuit Court of Cook County; the Hon_____ Judge Presiding.

Lower Court and Trial Judge(s) in form indicated in margin:

Appeal from the Circuit Court of Cook County.

The Hon. JAMES EPSTEIN, Judge presiding.

FOR APPELLANTS
John Doe, of Chicago
For APPELLEES, :

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel.  Indicate the word  r NONE if not represented.

APPELLANTS: DOHERTY & PROGAR LLC, Chicago, IL Mary Jo Greene and Stephanie W. Weiner

22

No. 1-08-3529

Smith and Smith of

Chicago,                          APPELLEE: LEAHY, EISENBERG & FRAENKEL, LTD., Chicago, IL Heath Sherman

(Joseph Brown, of counsel)

Add attorneys for third-

party appellants and/or

appellees.