# Illinois Official Reports

## Appellate Court

***Certain Underwriters at Lloyd's, London v. Central Mutual Insurance Co.*,
2014 IL App (1st) 133145**

| | |
|---|---|
| Appellate Court Caption | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Certificate No. CRCC001448, Plaintiff-Appellant, v. CENTRAL MUTUAL INSURANCE COMPANY, Defendant-Appellee (Golden Nail Builders, Inc., Erik Electric Service, Inc., and Pawel Bowal, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3145 |
| Filed | May 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the insurance coverage for the injuries suffered by an employee of a sub-subcontractor at a home construction site where the general contractor was the named insured under a commercial general liability policy issued by plaintiff and the electrical subcontractor had a policy issued by defendant that named the general contractor as an additional insurer but did not specify whether the additional coverage was primary or excess, and after defendant rejected plaintiff's tender of its defense, plaintiff filed the instant declaratory judgment action, the trial court did not err in concluding that defendant's policy provided only excess coverage and defendant did not breach any duty to defend, since the underlying claim did not fall within the scope of the coverage provided by defendant's policy, especially when defendant's policy provided that it was an excess insurer unless there was a contract requiring it to be the primary insurer, and in the absence of such a contract provision in the subcontractor agreement, the additional insurance provided by defendant defaulted to being excess pursuant to *River Village*; furthermore, defendant did not have to file a separate declaratory judgment action, because its answer to plaintiff's declaratory judgment action constituted a timely attempt to obtain a declaratory judgment in defendant's favor. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-19785; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Neal R. Novak and Colleen M. Costello, both of Novak Law Offices, of Chicago, for appellant. |
| | Craig L. Unrath and Natalie D. Thompson, both of Heyl, Royster, Voelker & Allen, of Peoria, and Brent A. Swanson and Andrew J. Roth, both of Heyl, Royster, Voelker & Allen, of Rockford, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. <br> Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1 General contractor Golden Nail Builders, Inc. (Builders), was the named insured on a commercial general liability insurance policy it obtained from Certain Underwriters at Lloyd's, London (Underwriters) and an additional insured on a commercial general liability insurance policy that subcontractor Erik Electric Service, Inc. (Erik Electric), obtained from Central Mutual Insurance Company (CMIC). When an employee of a sub-subcontractor was injured on a home construction site, the two insurers disagreed as to which was the primary insurer and which was the excess insurer. The disagreement arose because although Erik Electric was contractually required to maintain insurance coverage for Builders as an additional insured, the subcontractor agreement did not specify that the additional coverage be primary or excess. Underwriters filed this declaratory judgment action seeking a declaration that it was the excess insurer. However, on cross-motions for summary judgment, CMIC persuasively argued that the circumstances were nearly identical to those in *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 483, 919 N.E.2d 426, 428 (2009), in which the court determined the additional coverage at issue there was excess because (a) the agreement between the general contractor and subcontractor was silent as to whether the additional coverage obtained for the general contractor was to be primary or excess and (b) the "other insurance" clause in the subcontractor's insurance policy stated that coverage would be excess " 'unless a contract requires that this insurance be *** primary.' "

- 2 -

Underwriters appeals, urging us to find that the controlling case is *Ohio Casualty Insurance Co. v. Oak Builders, Inc.*, 373 Ill. App. 3d 997, 869 N.E.2d 992 (2007), in which the court found that two insurers were coprimary rather than primary and excess. Underwriters also contends CMIC is estopped from asserting policy defenses because it neither filed its own declaratory judgment action nor assumed Builders' legal defense, and that Underwriters is entitled to reimbursement of the funds it has expended on defending Builders.

¶ 2 Builders and Erik Electric are Chicago companies that entered into a subcontractor agreement on May 19, 2008. The agreement provided for subcontractor Erik Electric to "maintain coverage" for the duration of its project with contractor Builders, that the coverage limits of the liability insurance would be no less than $1 million, and that Builders "will be included as [an] Additional Insured." As we just noted above, the subcontractor agreement did not specify whether the additional insured coverage provided to Builders needed to be primary or excess insurance. Primary insurance coverage is coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of an event that gives rise to liability. *Whitehead v. Fleet Towing Co.*, 110 Ill. App. 3d 759, 764, 442 N.E.2d 1362, 1366 (1982). A primary insurer provides " 'first dollar' " coverage up to the limits of its policy. Scott M. Seaman & Charlene Kittredge, *Excess Liability Insurance: Law and Litigation*, 32 Tort & Ins. L.J. 653, 655 (1997). In contrast with primary insurance, excess insurance coverage is a secondary layer which protects an insured when a judgment or settlement exceeds the primary policy's limits of liability. *Id.* at 656. A secondary insurer covers the same risks as the primary insurer (*id.* at 657), but under the terms of an excess policy, the secondary insurer's "liability attaches only after a predetermined amount of primary coverage has been exhausted" (*Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 738, 545 N.E.2d 2d 541, 545 (1989); 1 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance 2d § 2.16, at 323 (1996)). Put another way, an excess policy does not broaden the underlying coverage, it increases the amount of coverage available to compensate for a loss. Excess insurance premiums are typically less expensive than primary insurance premiums because excess insurers experience less frequent claims and incur lower costs than primary insurers. See *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 116, 879 N.E.2d 305, 314 (2007); Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues*, 24 Tort & Ins. L.J. 715, 718 (1989).

¶ 3 Erik Electric obtained a certificate of liability insurance from CMIC dated May 20, 2008, which stated on its face, "[Builders] is named as an additional insured as respects General Liability, as required by written contract." The certificate also stated that it was "issued as a matter of information only and confers no rights upon the certificate holder" and "does not amend, extend or alter the coverage afforded by the policies below."

¶ 4 Builders and Casagrande Architects were sued by electrician Pawel Bawol on August 18, 2010, and in a first amended complaint Bawol added Erik Electric as a defendant. Bawol alleged that he was severely injured due to the defendants' negligence on or about November 26, 2008, while he was in the employ of an electrical sub-subcontractor and assisting Builders with the construction of a single-family home at 1920 North Hudson Avenue, Chicago. Bawol alleged he was hurt when he fell from a ramp made of piled masonry debris that tradesmen were to use when entering or leaving through the front door of the house under construction.

¶ 5 Builders tendered its defense of Bawol's suit to Underwriters on September 13, 2010, and Underwriters accepted the defense subject to a reservation of rights. Builders' defense attorney then tendered Builders' defense to CMIC on May 18, 2011. On October 27, 2011, however, CMIC's claims adjustor responded to counsel, "I do not see where our insurance coverage is triggered in this situation. Why do you feel your [client, Builders,] would qualify as an additional insured under our policy?" After getting no response, the claims adjustor sent a similar letter on December 5, 2011, to the defense attorney, stating, "I have not heard from you regarding my letter to you of 10/27/11. For your convenience I have included a copy of that letter. I look forward to hearing from you in the future." After still not receiving a response, CMIC sent another letter on January 13, 2012, but this time advising that the lack of response led CMIC to conclude that the tender of defense was being withdrawn and, if this was not correct, to contact CMIC. Builders still did not respond to CMIC, and on February 28, 2012, CMIC again wrote to Builders, this time stating that it considered the "silence on this matter" to be a withdrawal of the tender of defense and also that CMIC was declining coverage based on CMIC's policy language. On April 13, 2012, Underwriters contacted CMIC for the first time and said that Builders did not intend to withdraw its tender and that it would write again after taking the time to research the coverage issues. On April 19, 2012, Underwriters sent a detailed letter in which it "re-tender[ed]" Builders' defense and explained why it considered CMIC to be the primary insurer and liable for indemnifying Underwriters for opposing the Bawol suit. On May 10, 2012, CMIC declined the "re-tender."

¶ 6 Underwriters then initiated this declaratory judgment action, CMIC filed an answer which included affirmative defenses, and the parties filed cross-motions for summary judgment. After briefing and oral arguments, the circuit court granted in part Underwriter's motion for summary judgment, based on the court's finding that CMIC owed additional insured coverage to Builders. The court also, however, granted in part CMIC's motion for summary judgment, based on the court's findings that the CMIC coverage was excess only based on the plain language of the policies and that CMIC was not estopped from asserting policy defenses due to the fact that the excess insurer had no duty to defend Builders and had timely rejected the tender and "re-tender" and defended against Underwriters' declaratory judgment action. This appeal followed.

¶ 7 The construction of an insurance policy and the determination of contractual rights are questions of law that are appropriately addressed through the summary judgment process. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755, 835 N.E.2d 890, 896 (2005). While the entry of summary judgment is considered a "drastic measure," it is a proper and expeditious means of disposing of a lawsuit when the moving party's right to judgment is "clear and free from doubt" and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992); 735 ILCS 5/2-1005(c) (West 2008) (the Code of Civil Procedure provides for the entry of summary judgment only where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). We review *de novo* the trial judge's entry of summary judgment. *Outboard Marine*, 154 Ill. 2d at 102, 607 N.E.2d at 1209.

¶ 8 If the words used in an insurance contract, when given their plain and ordinary meaning, are unambiguous, then we apply the terms of the policy as written. *CMK Development Corp. v. West Bend Mutual Insurance Co.*, 395 Ill. App. 3d 830, 837-38, 917 N.E.2d 1155, 1162

(2009). When construing insurance contracts, our goal is to ascertain and give effect to the contracting parties' intentions as expressed in the agreement or agreements they signed. *CMK Development*, 395 Ill. App. 3d at 837-38, 917 N.E.2d at 1162.

¶ 9 "Other insurance" clauses came about in response to the targeted tender doctrine. *River Village*, 396 Ill. App. 3d at 487, 919 N.E.2d at 431.

"The targeted tender doctrine allows an insured who is covered by multiple and concurrent [primary] insurance policies to select, or 'target,' which insurer he wants to defend and indemnify him regarding a specific claim. [Citation.] The insured essentially can choose which insurer among his several co-insurers will participate in the claim against him; he can elect one insurer over another, or, even deactivate coverage with an insurer he previously selected in order to invoke exclusive coverage with another. [Citations.] This allows an insured who has paid for multiple [forms of] coverage to protect his interests, namely, keeping future premiums low, optimizing loss history and preventing policy cancellation among the insurers he chooses. [Citation.]

In an effort to override this right of the insured to choose among co-insurers, insurers developed 'other insurance' excess provisions in their policies. These provisions attempt to render otherwise primary insurance as excess over any other collectible insurance, most often with statements in the policy that declare the insurer's coverage to be excess over any other valid and collectible insurance available to the insured. [Citation.] In such instances, the 'other insurance' excess provision requires the insured to exhaust the policy limits of the other co-insurers before being able to trigger a defense and indemnification duty in that insurer. [Citation.]" *River Village*, 396 Ill. App. 3d at 486-87, 919 N.E.2d at 431.

¶ 10 The contract between Underwriters and Builders indicates the insurance coverage is primary unless there is other primary insurance available to Builders. Section IV of the Underwriters contract, which is entitled "Commercial General Liability Conditions," states in pertinent part:

"4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss *** our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. ***

b. Excess Insurance

This insurance is excess over:

***

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement."

¶ 11 The CMIC policy also includes an "other insurance" clause. According to the "General Liability Plus Endorsement" to the CMIC policy:

"[The CMIC coverage to an additional insured] is excess over:

Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing. Where required by contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with the insurance."

This CMIC policy language is reiterated in an amendment, which states:

"Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing. Where required by contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with the insurance."

¶ 12    Summarizing these clauses: (1) the Underwriters' policy plainly states that Underwriters is the primary insurer, but if other primary insurance is available, then the Underwriters coverage will become excess, and (2) the CMIC policy plainly states that CMIC is the excess insurer unless a condition precedent is met: there is a contract requiring CMIC to be the primary insurer. Accordingly, we next look to whether CMIC is "required by contract" to be primary. The subcontractor agreement between Builders and Erik Electric is undisputedly silent as to whether the coverage provided to Builders as an additional insured will be primary or excess insurance. Also, the CMIC certificate of liability insurance that identified Builders as an additional insured gives no indication as to whether that coverage is primary or excess.

¶ 13    In *River Village*, the court considered the same two clauses we have quoted above and the same circumstances, that is, where a subcontractor was contractually required to obtain additional insured coverage for a general contractor but the parties' contract did not spell out whether that coverage had to be primary or excess. *River Village*, 396 Ill. App. 3d at 482, 919 N.E.2d at 428. In that case, the court concluded that the condition precedent language that appears in the CMIC policy, namely, there must be a contract dictating that the additional insurance will be primary, did not exist and that the additional coverage defaulted to being excess only. *River Village*, 396 Ill. App. 3d at 491, 919 N.E.2d at 435.

¶ 14    Consistent with this opinion, we conclude that the clear and unambiguous condition precedent language in the CMIC policy was not satisfied and that the CMIC policy provides only excess coverage to Builders for the Bawol lawsuit. We also find it clear and unambiguous that Underwriters agreed to provide primary coverage in all instances except where it is shown that other primary coverage is available and that because there is no other primary insurance available, Underwriters is the primary insurer to Builders.

¶ 15    Underwriters argues *River Village* is distinguishable because that primary insurer did not provide its insurance policy for the court's review. This does not, however, change the fact that the *River Village* court analyzed the same policy language at issue here (the "other insurance" clause in the subcontractor's policy) and held that because the subcontractor agreement did not specifically require that the CMIC coverage be primary, that the condition precedent to primary coverage was not met. *River Village*, 396 Ill. App. 3d at 491, 919 N.E.2d at 435.

¶ 16    Underwriters argues that *Oak Builders*, 373 Ill. App. 3d 997, 869 N.E.2d 992, is dispositive of the main issue in this case because the two policies there contain the same "other insurance" clauses that are in the CMIC and Underwriters policies and, as a consequence, the trial court should have concluded that the CMIC and Underwriters policies are incompatible and therefore cancel each other out, rendering the insurers coprimary. We disagree with this conclusion. In *Oak Builders*, the court quoted but did not analyze the condition precedent language, operated from the presumption that the general contractor's insurer was a primary insurer, and then analyzed whether the other insurer was a coprimary or excess insurer. *Oak Builders*, 373 Ill. App. 3d 997, 869 N.E.2d 992. Here, the condition precedent language in the CMIC policy is pivotal in determining which of the two insurers is primary and which is excess, we have no grounds for presuming that either insurer is primary, and nothing in the subcontractor agreement or either insurance policy suggests that a coprimary arrangement is the appropriate conclusion to draw in this instance.

¶ 17    The *Oak Builders* court found that because both policies contained "other insurance" clauses that converted otherwise primary coverage into excess coverage whenever primary coverage was available, the clauses were irreconcilable and that the insurers should share the cost of defending and indemnifying the underlying tort suit. *Oak Builders*, 373 Ill. App. 3d at 1004, 869 N.E.2d at 997. One reason the court determined the "other insurance" clauses were irreconcilable was that the facts of that case led to a different result depending upon which policy was read first. *Oak Builders*, 373 Ill. App. 3d at 1003, 869 N.E.2d at 996-97. The majority rule for resolving "other insurance" disputes is that these provisions should be reconciled whenever possible in order to effectuate the intent of the parties, but that the court cannot arbitrarily pick one policy to be read first and undermine the intention of the insurer whose policy is read second. *Oak Builders*, 373 Ill. App. 3d at 1001, 869 N.E.2d at 995 (citing *Putnam v. New Amsterdam Casualty Co.*, 48 Ill. 2d 71, 78-79, 269 N.E.2d 97, 100-01 (1970) (deeming identical "other insurance" clauses to be incompatible is fair when there is no rational basis for applying the clause of one policy and refusing to apply the clause of the other policy)). It is unclear from the *Oak Builders* opinion why the court presumed the general contractor's insurer was primary coverage and that the issue before the court was whether the subcontractor's additional insured endorsement rendered it coprimary coverage or excess coverage. *Oak Builders*, 373 Ill. App. 3d 997, 869 N.E.2d 992. But here, the two "other insurance" provisions can be easily reconciled regardless of which policy is read first. Above, we set out the terms of the plaintiff's policy (Underwriters) before setting out the defendant's policy (CMIC), but the order makes no difference and does not change the contracting parties' words and apparent intent. The two policies are compatible primary and excess policies. It would be arbitrary and unfair to disregard the condition precedent in the CMIC contract, follow *Oak Builders*, and conclude that the two insurers are coprimary. *Oak Builders*, 373 Ill. App. 3d 997, 869 N.E.2d 992. We find the reasoning in *River Village* to be thorough, persuasive, and on point, and we choose to follow that precedent.

¶ 18    For these reasons, we reject appellant Underwriters' main appellate contention that the trial court erred in following *River Village* instead of *Oak Builders* and erred in concluding that the subcontractor's insurer, CMIC, provided excess coverage only.

¶ 19    Our next consideration is whether CMIC is estopped from asserting any policy defenses to coverage because it neither defended Builders in the Bawol tort suit under a reservation of rights nor timely filed a declaratory judgment action for an adjudication of its obligations to

Builders. Underwriters argues that CMIC was "sitting on the sidelines and doing nothing" while the underlying tort suit was underway.

¶ 20    The estoppel doctrine arose from the principle that an insurer's duty to defend its insured "is so fundamental an obligation that a breach of that duty constitutes a repudiation of the [insurance] contract." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151, 708 N.E.2d 1122, 1135 (1999). An insurer's duties under an insurance agreement are ordinarily triggered when the insured or someone acting on behalf of the insured tenders the defense of an action that is potentially within the scope of coverage. See, *e.g.*, *Alcan United, Inc. v. West Bend Mutual Insurance Co.*, 303 Ill. App. 3d 72, 75, 707 N.E.2d 687, 689 (1999) (in which tenders were made by insurance broker and third-party claims adjustor). When an insurer determines that an underlying suit potentially implicating coverage is not covered under the policy that includes a duty to defend, the insurer may not simply refuse to defend the insured. *Employers Insurance*, 186 Ill. 2d at 150, 708 N.E.2d at 1134-35. Instead of "sitting on the sidelines" as Underwriters argues occurred here, the insurer must act on one of two options. The insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *Employers Insurance*, 186 Ill. 2d at 150, 708 N.E.2d at 1134-35. If the insurer fails to take one of these two steps "and *is later found to have wrongfully denied coverage*, [then] the insurer is estopped from raising policy defenses to coverage." (Emphasis added.) *Employers Insurance*, 186 Ill. 2d at 150-51, 708 N.E.2d at 1134-35. "An insurer cannot safely or justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the claim is beyond the policy's coverage." *Korte Construction Co. v. American States Insurance*, 322 Ill. App. 3d 451, 457, 750 N.E.2d 764, 769 (2001).

¶ 21    Consistent with these legal principles, we make two findings. First, the estoppel doctrine is not relevant here where the CMIC coverage was excess only and did not obligate CMIC to defend the Bawol suit. CMIC's policy provided, "When this insurance is excess, we will have no duty to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.' " Thus, the principle that Underwriters is relying upon is not applicable to the facts of this case. CMIC did not breach a duty to defend and is not estopped from asserting policy defenses to coverage.

¶ 22    Our second finding is based on a record that indicates CMIC was *not* just "sitting on the sidelines and doing nothing" as the Bawol suit progressed. The record indicates that the Bawol defense was tendered to CMIC on May 18, 2011, and that CMIC responded with three letters, dated October 27, 2011, December 5, 2011, and January 13, 2012, in which it attempted to investigate the coverage question, but Builders' attorney did not respond to the three inquiries. On February 28, 2012, CMIC sent a letter to Builders' attorney stating that the lack of a response was being construed as a withdrawal of the defense tender to CMIC (and also that the claim did not come within the scope of CMIC coverage). After this, a third party employed by Underwriters reviewed the file and wrote to CMIC on April 13, 2012, stating that Builders did not intend for its silence to be construed as a withdrawal of the tender. Builders then changed attorneys and on April 19, 2012, Builders' new lawyer "re-tender[ed]" the defense to CMIC. Very shortly afterward, on May 10, 2012, CMIC denied the "re-tender," and very shortly after that, on May 20, 2012, Underwriter initiated the present coverage suit. Underwriters named CMIC as a party to this declaratory judgment action. CMIC filed an answer and affirmative defenses seeking a favorable declaratory

judgment, and ultimately, the trial court granted summary judgment in favor of CMIC's coverage position. Accordingly, our second finding is that CMIC timely sought a declaratory judgment regarding its contractual obligation to Builders when CMIC filed an answer and affirmative defenses seeking a declaration in CMIC's favor. It was not necessary for CMIC to initiate a separate declaratory judgment action. *Ayers v. Bituminous Insurance Co.*, 100 Ill. App. 3d 33, 35, 424 N.E.2d 1316, 1318 (1981) (indicating an insurer sought a favorable declaratory judgment by filing an answer to the insured's declaratory judgment action and a third party complaint against the plaintiff in the personal injury action, and that by doing so the insurer had discharged its duty to pursue judicial declaration of its rights under the policy).When an insurer's unreasonable delay, however, forces an insured to institute litigation to determine their rights and duties under the insurance contract, merely filing an answer will not stave off the estoppel doctrine. *Korte Construction*, 322 Ill. App. 3d at 458, 750 N.E.2d at 767-68 (affirming application of the estoppel doctrine and the entry of statutory penalties for unreasonable and vexatious claim handling where an insured repeatedly asked the insured to provide a defense, but the insurer repeatedly refused, "abandoned its insured," "did absolutely nothing," and "wait[ed] for the insured to institute litigation"). Nonetheless, the estoppel doctrine is not meant to provoke "a race to the courthouse" and the insured should not be able to estop the insurer from asserting policy defenses merely because the insured was the first to the courthouse with a complaint for declaratory judgment. *Korte Construction*, 322 Ill. App. 3d at 458, 750 N.E.2d at 769-70 ("[w]hile there need not be a race to the courthouse," and the insured does not trigger estoppel merely by filing first, the insured must take action within a reasonable time of a demand by the insured). After reviewing the parties' conduct in light of these principles, we find that even if CMIC had a duty to defend, CMIC did not breach that duty because CMIC timely sought a judicial declaration of its duties. Underwriters' reliance on the estoppel doctrine is misplaced.

¶ 23    For the reasons discussed above, we reject Underwriters' arguments for reversal. We conclude that CMIC was entitled to judgment as a matter of law that it is an excess insurer only and that it is not estopped from asserting policy defenses to coverage for Builders. The judgment of the circuit court is affirmed.

¶ 24    Affirmed.